King v. Woodbridge.

---

MOSELY F. KING v. FREDERICK E. WOODBRIDGE.

*Delivery of Written Contract. Evidence. Damages.*

The delivery of a written contract is indispensable to its binding effect, and is not conclusively proved by showing the delivery of the paper, constituting the alleged contract, by the alleged contracting party to the other. The lat-

King v. Woodbridge.

ter may show by parol that the paper was not delivered to, or accepted by, him as a contract, but as something else; in this particular case, merely as a receipt for certain articles to be transported by the defendant for the plaintiff by railroad.

*Held*, that the acceptance by the plaintiff from the defendant of this receipt, without reading it and supposing it to be merely a receipt, though it contained stipulations so indorsed upon it as to become a part of it, if treated as a contract, to the effect that the defendant did not guarantee any special dispatch in the transportation of any article, unless it were expressly so stipulated in writing, did not, under the circumstances of its reception, conclude the plaintiff from showing by parol that the defendant did guarantee the delivery of the articles at their point of destination with special dispatch and at a particular time.

It is competent for a witness to testify in regard to the general course of business in a particular trade, his knowledge of which is derived from expereience therein, though partly obtained from information from others in the course of such business.

The defendant, a common carrier, contracted with the plaintiff to transport certain articles to a certain place by a certain time, being informed by the plaintiff at the time that he desired to have the articles there at the time named, because that was the market day for such property, and the most favorable time to sell it. The defendant having failed to fulfill his contract, it was held that the plaintiff was entitled to recover as damages the difference between what he was obliged to sell the property at when it did arrive in market, and what he would have received at the time at which it would have arrived, if the defendant had performed his contract.

Assumpsit upon a contract that, in consideration of fifty dollars paid by the plaintiff to the defendant at the time of making the contract, the plaintiff delivered to the defendant, who was the managing trustee of the Rutland & Washington Railroad, and as such a common carrier, at Poultney, a certain number of sheep, on the 11th of May, 1857, which the defendant agreed to transport and deliver to the plaintiff at Troy, New York, the next day, by fifty minutes past four o'clock P. M., or in season for the plaintiff to get them on board a certain boat that left Troy the evening of the 12th of May, so as to arrive by due course of that boat in New York the next morning, (Wednesday) that being the sheep-market-day in New York. The breach alleged was, that the sheep were not delivered in Troy by the time specified, and not in season for said evening boat for New York, whereby the sheep were detained at Troy, at expense to the

King v. Woodbridge.

plaintiff, and did not reach New York in season for said sheep market on Wednesday, by reason whereof the plaintiff sustained damage by being obliged to sell them at a less price than he would, had they reached there in season for that market day, the sheep-market-day being the most favorable time to sell.

The defendant pleaded the general issue, and the case was tried by jury at the September Term, 1859, in Rutland County ALDIS, J., presiding.

The plaintiff's testimony tended to show that the plaintiff made a bargain with Jonas Wilder, the superintendent of the Rutland & Washington Railroad Company, for the transportation of 240 sheep from Poultney, Vt., to Troy, New York, for the price of $50.00.

The defendants claimed that the contract for the transportation of the sheep was in writing, signed by Mr. Joslin, the station agent at Poultney, and delivered to the plaintiff at the time the contract was made and the sheep put on the cars,—and objected to parol evidence to vary or explain the terms of the contract. The plaintiff claimed and offered to prove by parol that the alleged contract was merely a receipt or voucher to show that the price of the transportation ($50,) was prepaid,—that the paper was given at the time the $50 was so prepaid, and was called a receipt, and intended only for such a voucher and not as the written evidence of the contract,—that the plaintiff only read the signature of Joslin at the time,—that he supposed it was a receipt merely, and did not read the rest of it till some weeks afterwards. The paper was produced, and was as follows:

"RUTLAND & WASHINGTON RAILROAD.

POULTNEY STATION, May 12, 1857.
Received of

| Articles. | Marks. | Weight or Measure. |
|---|---|---|
| 3 Cars Sheep. | M. F. King, | 40,000 lbs. at $50.00 |
| | Troy, N. Y. | which is prepaid. |

Numbered and marked as above, contents and value unknown, which the Trustees promise to forward by the Railroad and deliver to M. F. King or order, at the depot in Troy. But this engagement is in all respects subject to the terms and conditions of the regulations adopted and published by the Trustees and those indorsed hereon.      J. JOSLIN, for the Trustees."

Among the terms and conditions indorsed upon this paper, was the following : " The Trustees will not guarantee any special dispatch in the transportation of any articles, unless made the subject of express stipulation in writing." All of the conditions on the back of the paper, as well as the greater part of the face of the paper, were in print ; the date, description, etc., of the articles, name of consignee, place of consignment, and signature alone being in writing.

This parol evidence was admitted subject to the charge of the court upon the facts as they might appear in the testimony.

The plaintiff then proceeded to testify as follows :—that on Monday, May 11th, 1857, he applied to Joslyn, the Station agent, and wished to know if the sheep could be carried to Troy so as to get there without fail, on Tuesday, in time for the sheep to be put on board the steamboat going down the river to New York that evening, and for what price they could be transported ; that Joslin told him the price would be $50, but as to the time of arrival he could not tell him, and told him to go to Wilder, (the supt.,) to make the contract ; that he went to Wilder, and told him that Wednesday was the sheep market day in New York—and that he had been put to $30 extra expense the week before in getting his sheep to market in time for the market day, on account of the trains being too late for the boat, and that he wished to know whether he could depend upon it, and not be disappointed, that the sheep should get to Troy on Tuesday, and arrive there in time to be loaded on to the steamboat that went down that evening to New York ; that in reply to this inquiry, the sup't, Wilder, said to him, " I will warrant them to be there in time for the boat ;"—that the plaintiff then said, that if he could depend upon it, he would have his sheep sent by the cars, but that he did not want to load the sheep on to the cars unless they would get to Troy in time for the boat of Tuesday evening ; that Wilder said they had got everything arranged, and would have his sheep arrive there in time for the boat; that he (Wilder) said he would warrant the sheep to arrive at Troy by 4:50 P. M., or at any rate, in time for the boat; that the plaintiff thereupon said if he could depend on that, he would pay him the price of the transportation then, and he (Wilder) might give him a pass

King *v.* Woodbridge.

and he would go on in the morning train of Tuesday, and so have hands ready at Troy to drive the sheep directly from the cars to the boat ; that he thereupon offered Wilder $50 (the transportation price) ; that Wilder said to him, " You can pass the money to Joslin, and he will receipt it for you ;" that he thereupon handed the money to Joslin ; that Joslin handed him back the paper above recited; that he only looked at it to -see that Joslin's name was signed to it, and then doubled it up and put it in his pocket and went off ; that he was not requested to notice the paper ; that he did not read it till some weeks after, and after this controversy had arisen ; that he could not read such fine print as was on the back of the paper without his glasses, and that he did not take them out to read it; that he thought the paper was a receipt and nothing more. The witness further testified that the sheep did not arrive in time for the boat, and so were prevented from reaching New York before Thursday ; that Wednesday was the best and principal market day for sheep ; that the best buyers came on that day, and the loss on his sheep in the price for which they had to be sold on account of their arriving on Thursday instead of Wednesday, was fifty cents per head ; that he had been to New York to sell sheep the week before this flock of sheep was sent, and that what he testified to as to Wednesday being the chief sheep market day, and as to his loss on account of their not arriving on Wednesday, was founded upon what he learned from being at New York on these two occasions, and from his inquiries then made in regard to such matters. To this testimony of the plaintiff, as to the market day and his loss, the defendants objected, but it was admitted by the court. The testimony on the part of the defendant directly contradicted the testimony of the plaintiff.

In regard to the paper above recited, the court told the jury that upon its face it was a contract to carry the three car loads of sheep without any warranty for special dispatch, and for their arrival in time for the boat ; that it was only an agreement to forward them with reasonable diligence, and did not prove the contract as laid in the declaration ; that the plaintiff claimed that he took the paper only as a receipt for money—a mere voucher that the freight was prepaid, and not as a writing embra-

cing the terms of the contract. As to this claim of the plaintiff, the court charged the jury that if the plaintiff, in the exercise of reasonable and ordinary judgment and understanding in the transaction of business, had a right to understand from what was said and done at the time, and upon the occasion of writing and taking this paper; that it was merely a receipt or voucher to show that the freight was prepaid, and nothing more; and if, in fact, he did so understand it, and did not read it at the time, and did not know what the provisions of it were until after his sheep had been sent off in the cars to Troy, then the paper would not be conclusive evidence of the contract, and the parole evidence, to show a special contract warranting the arrival of the sheep at Troy in time for the boat, as alleged in the declaration, would be admissible, and might be weighed by them; but on the other hand, if, at the time of writing and taking the receipt, the plaintiff, using reasonable and ordinary judgment and understanding, ought to have understood from what was then said and done, that it was not merely a receipt or voucher to show that the freight was prepaid,—or if, in fact, he did not so understand it; or if he had read or knew what the provisions of the paper were before his sheep were sent off on the cars, then he would be bound by the terms of the contract as expressed in that paper, and the parol evidence would not be admissible to set up the special contract warranting the time of arrival, and such parol evidence must not be weighed or considered by the jury. The court also told the jury, that the fact that the plaintiff took and kept the paper, did not prove that he had actual knowledge of its provisions as printed upon its back; and if he had a right to understand, and did understand as aforesaid, that it was merely a receipt for the money when he took it, then it must appear that he afterwards, and before the sheep were sent off on the cars, had actual knowledge or notice of the terms printed on the back of the paper, in order to have it binding on him as a written contract so as to exclude the parol evidence

To the charge of the court relating to the aforesaid paper, and to the plaintiff's claim in regard to it, and to the admission of the evidence objected to, the defendant excepted. In other

respects the court gave such instructions as the case required, to which no exceptions were taken.

*E. J. Phelps*, for the defendant.

*Briggs & Nicholson* and *L. C. Kellogg*, for the plaintiff.

PECK, J. It is conceded that if the paper delivered by Joslin to the plaintiff was so delivered by the defendant and accepted by the plaintiff as to give it efficiency to the extent of its provisions or as a contract, it would exclude the parol evidence and defeat the plaintiff in his action, and the court in effect so told the jury.

The defendant claimed that it was the written contract of the parties, and that it excluded the parol evidence. The plaintiff denied its existence as a contract, and insisted on the right to prove the contract by parol evidence.

The defendant, having objected to the parol evidence on the ground that the contract was in writing, took the burden on himself to show that fact; that is, that there was such a written contract entered into between the parties. This involved proof not only that a written contract was executed, but that it was delivered.

The delivery of a written contract is no part of the contract, and is not proved by it. It is an act done in reference to it, but indispensable to give it efficacy to bind the parties to it. This act intervenes between the execution of the contract and the time when it becomes operative, and the proof of it essentially rests in parol.

This the defendant might have proved in various ways so as to exclude parol evidence of the terms of the contract : by the admission of the plaintiff, by a preliminary inquiry of him on the stand, or by Joslin, who handed it to the plaintiff, or, as was probably the fact in this case, by the production of it on trial by the plaintiff at the defendant's request, thereby showing it into the plaintiff's possession ; for although this paper is not signed by the plaintiff, but by the other party only; yet, as a general rule, a delivery by the party signing a contract to the other party accepting it, binds the latter, as his assent to its terms is to be

presumed.   This paper being shown into the custody of the plaintiff, a due and proper delivery of it was to be presumed, and the burden is thrown on the plaintiff to obviate that presumption by proof.   Was the evidence introduced by the plaintiff as to the circumstances under which the paper came into his possession, competent and sufficient to show that there was no such delivery of the paper as to make it operative as a binding contract?

There is no legal objection to the character of the evidence, that is, that it was parol evidence, since the question of delivery rests in parol.   The defendant's evidence to prove the delivery was, in its nature, parol, and hence may be met by parol evidence on the other side.   The real question is as to its sufficiency to do away with the *prima facie* influence of a delivery arising from the fact that the paper was shown in the plaintiff's possession at the trial.

This presents the question, what is a delivery?   It is in its legal acceptation something more than merely changing the manual custody or possession.   That may or may not be a delivery according to the intent of the parties.   It is a question of intent and purpose ; of mutual intent and purpose implying an acceptance as well as a delivery.   It is the final act of the parties by which the party executing the instrument puts it into the possession of the other party to it, who receives it, both intending thereby to make it operative and binding.   This intent and purpose is generally inferred from the act itself of thus changing the custody, or from the fact that the party to whom it purports to be executed has it in his possession, but it may be explained and rebutted.   It may be shown that the party executing the contract handed it to the other party, not as a final delivery, but to be examined and returned to the party for further examination, or for the purpose of being retained till some precedent act is done by the party to whom it purports to be executed.   It may be shown that the party obtained possession of it by accident, and against the will of the other party, or that by mistake of both parties a wrong paper was delivered.   Nor is it necessary that it should be shown that it was by a mistake of both parties : a mistake of either is sufficient, especially when that mistake is caused by the conduct and declarations of the other party, as the jury found in this case.

. King *v.* Woodbridge.

Suppose that the plaintiff after making the verbal contract as he did with Wilder, had offered to pay him $50, on some prior dealings or indebtedness in no way connected with this contract, or with the transportation of the sheep in question, and, on Wilder's telling him to hand it to Joslin and that Joslin would give him a receipt for it, had paid it to Joslin and Joslin supposing it applied to the freight of the sheep had given him this paper, and he had taken it as he testified without reading it, supposing it was a receipt for the money on the prior indebtedness and nothing more, and did not know to the contrary till after this controversy arose, could it be claimed that he would be bound by it as the contract of the defendant to which he had no reason to suppose it had any relation ? Clearly this would not be a delivery that would thus bind him. But it is claimed by defendant's counsel that as the plaintiff knew it had reference to this transaction, if he took it without reading it he did so at his peril and is bound by its contracts. It is true he knew the money he paid had reference to the contract he had just made, and supposed the receipt was a receipt for the freight he was to pay upon it, but the jury have found that from what transpired and from what was said and done, he did not suppose, and had no reason to suppose it was any thing more than a receipt for the money so to apply. The payment by the plaintiff was but a performance of his part of the contract, and a receipt for it would only be a written admission by the other party of the fact of payment ; therefore the plaintiff, although he knew the receipt was to apply to this transaction, had no reason to suppose it would contain the terms of the defendant's undertaking, as that would not be within the scope or meaning of the term *receipt*, either in the legal or popular sense. A receipt and a contract are entirely different. One discharges, and the other creates, an obligation.

The plaintiff by being promised a receipt for the money, and so understanding it, had no notice that the paper delivered was a contract between the parties, so that the case in principle is the same as if the receipt he was to receive had reference to some other debt or transaction. The evidence, we think, tended to show that there never was any such delivery and acceptance of the paper, as a contract, as to make it binding as such between the

parties, and the evidence was left to the jury under proper instructions, and they having so found were properly allowed to resort to the parol evidence of the contract.

The defendant having failed in the preliminary proof in establishing the fact that there was a written contract between the parties, his objection to the parol evidence was left with no foundation to rest upon.

It is conceded that if the plaintiff had been thus deceived through the fraud of the defendant such would be the result. But fraud under the circumstances of this case is unnecessary. The mistake and misapprehension produced by the declarations and conduct of the other party, is the same in its consequences to the plaintiff, and we think in legal effect, as fraud. It is entirely different from showing a mistake in the terms of a written contract duly delivered. It is therefore, unnecessary to enter into the question or into the causes, in reference to the admission of parol evidence of a contract when there is a contract in writing, for here was no written contract.

Another question is made as to the admission of certain evidence objected to by the defendant, and admitted by the court, as to Wednesday being the market day, and as to the loss of the plaintiff in the sale of his sheep in consequence of the sheep not being in New York that day. It appears that the plaintiff testified that Wednesday was the best and principal market day for sheep ; that the best buyers came on that day, and that the loss in his sheep in the price for which they had to be sold on account of their arriving on Thursday, instead of Wednesday, was fifty cents per head ; that he had been to New York to sell sheep the week before this flock of sheep was sent, and that what he testified as to Wednesday being the chief market day, and as to his loss on account of their not arriving on Wednesday, was founded on what he learned from being at New York on those two occasions, and from his inquiries there made in regard to such matters. This was objected to by the defendant, but admitted by the court.

On reference to the minutes of the judge who tried the case, it appears that the testimony of the witness as to his means of knowledge came out on the defendant's cross examination. It

King *v.* Woodbridge.

does not appear from the exceptions on what ground the defendant objected to this testimony, as the objection is general. It is now objected that the facts testified to by the witness on the direct examination, are not competent evidence, and also that his means of knowledge, as shown on cross examination, rendered his testimony inadmissible. Waiving the question made by the plaintiff whether these objections can now be raised as the case is presented, we think the defendant's objection must be overruled. The knowledge of a party of the general course of business in a particular trade, which he derives from being engaged in that trade, although partly derived from information from others in the course of such business, is of that general character that renders it competent evidence. Such is the character of this evidence. The limited extent of the knowledge of this witness was a question to be considered by the jury in weighing the evidence, and not one affecting its competency.

As to the other objection to the admission of this evidence, that the damages it tended to prove are too remote, we think that is equally untenable, as it appears, or at least the evidence so tends to show, that the defendant was informed of these facts at the time the contract was made as a reason why the plaintiff wanted the sheep in New York on that market day. If it was necessary, in order to entitle the plaintiff to recover such damages, to show that the defendant had such notice at the time the contract was made, (as to which we express no opinion,) the evidence tended to show it, and it is to be presumed the charge of the court was correct in this point, as no exception is taken to the charge, except in relation to the paper, and it is stated that in all other respects the charge was satisfactory to the defendant.

Exceptions overruled and judgment affirmed.