STURGEON v. ST. LOUIS, KANSAS CITY AND NORTHERN RAILWAY CO., APPELLANT.

1. **General Verdict on Several Counts.** The Supreme Court will reverse a judgment, when the verdict is a general verdict on a petition which states distinct causes of action, and the attention of the trial court has been directed to the error.

2. **Common Carrier:** SPECIAL CONTRACT: INSTRUCTION. In a suit against a railroad company an instruction that defendant is responsible, as a common carrier, for any negligence, misconduct or carelessness resulting in loss to defendant, notwithstanding a special contract read in evidence, states the law correctly, and is not liable to the criticism that it leaves it to the jury to determine what are the responsibilities of the common carrier.

65  569
34a 112
65  569
59a   3
65  569
66a 396
65  569
74a 413
65    569
100a ³688

3. ——: ——: MEASURES OF DAMAGES. In such a suit for damages, caused by delay in delivering hogs, it appeared that there was a shrinkage in the weight of the hogs during the transit, greater than would have occurred if the train had gone through in the the usual time. *Held*, that plaintiff was entitled to recover for this extra shrinkage, as well as for the decline in the market value of the hogs.

It appeared also that there was a special contract exempting defendant from liability for any loss by suffocation of the hogs, and that several were suffocated in the cars. *Held*, that, if this resulted from the negligence of defendant, plaintiff was entitled to recover for the loss, and the measure of his recovery would be the difference in the value of the hogs when alive and when dead, at the point of delivery.

*Appeal from Montgomery Circuit Court.*—HON. G. PORTER, Judge.

At the request of defendant the court gave the following instruction:

3. Although the jury may believe, from the evidence, that the plaintiff did, on or about the 20th day of January, 1873, deliver to the defendant two car loads of hogs, to be transported or conveyed from Wellsville, in Montgomery county, to the City of St. Louis, and that one of said hogs was lost, after the same was received by defendants, yet, if the jury further find from the evidence, that before said hogs were shipped from Wellsville, the plaintiff and defendant entered into a written or printed contract, signed by them or their authorized agents, by the terms of which said contract it was agreed that plaintiff should take care of said freight while on the trip, and load and unload the same at his own risk and expense, then the burden of proof is upon the plaintiff to show how said hog was lost, and the plaintiff is also bound to show, to the satisfaction of the jury, that said hog was lost by reason of the negligence of the defendant or its agents or servants; and unless the plaintiff has shown said hog was lost, and also that such loss was caused by the negligence of the defendant or its agents, then the finding must be for the defendant as to the amount claimed for the lost hog.

*Wells H. Blodgett* for appellant, cited, *Ranney v. Bader*, 48 Mo. 540; *Bigelow v. N. Mo. R. R. Co.*, Ib. 512; *St. Louis v. Allen*, 53 Mo. 44; *Hickey v. Ryan*, 15 Mo. 62; *Newman v. Lawless*, 6 Mo. 279; *Fugate v. Carter*, Ib. 267; *Coleman v. Roberts*, 1 Mo. 97; *Smith v. N. H. & N. R. R.*, 12 Allen 531; *Faulkner v. S. P. R. R.*, 51 Mo. 311; *Ward v. N. Y. C. R. R. Co.*, 47 N. Y. 29; *Penn v. B. & E. R. R. Co.*, 49 N. Y. 204; *Cragin v. N. Y. C. R. R. Co.*, 51 N. Y. 61; *Bankard v. B. & O. R. R. Co.*, 34 Md. 197; *Lake Shore & M. S. R. R. Co. v. Perkins* 25 Mich. 329; *Ballentine v. N. Mo. R. R.*, 40 Mo. 491; *Mich. So. & N. Ind. R. Co. v. McDonough*, 21 Mich. 165.

*John M. Barker* for respondent.

It was impossible for the appellee to take care of the freight while on the trip. The whole management of the train and its construction is involved in such a duty, and the assumption in defendant's third instruction, that plaintiff was bound to show *how* the hog was lost, is erroneous; the evidence showed it was lost while in the appellant's care and custody. The idea assumed by common carriers that they can reap all the rewards of their avocation and absorb all the privileges of fostering legislation, and yet shirk their plainest duties to the public, under the guise of special contracts, reduced rates, and styling themselves "forwarders," is emphatically repudiated by the courts. *Ketchum v. American M. U. Ex. Co.*, 52 Mo. 390; *Levering v. U. Transp. Co.*, 42 Mo. 88.

NAPTON, J.—The judgment in this case must be reversed, because the petition stated two separate and distinct causes of action, upon which a general verdict was rendered, and the motion in arrest of judgment specifically directed the attention of the court to this objection. *Owens v. H. & St. J. R. R. Co.*, 58 Mo. 394, and cases there cited.

The first instruction given by the court for the plaintiff, is objected to, as leaving to the jury to determine a ques-

tion of law, but this construction of it seems rather hyper-critical. It speaks of the defendant as a common carrier, but proceeds to state what responsibilities the defendant incurred in that capacity, so far as the case in hand required and to assert that notwithstanding the special contract which had been read in evidence, the defendant was still responsible for any " negligence, misconduct or carelessness resulting in loss to the plaintiff." And this was in con-formity to the doctrine repeatedly maintained by this court. The next instruction points out the measure of damages which in the event that the negligence of defendant was the cause of them, is stated to be " the difference in the market worth of the hogs when they ought to have been delivered, and when they were actually delivered." To this no objection is made ; but the court proceeded further to declare that in addition to this, the plaintiff was also entitled to " the value per pound gross weight of the differ-ence when they ought to have been delivered, and when they were actually delivered," and this portion of the instruction is objected to upon the ground that the difference in the mar-ket value of the hogs when delivered and when they ought to have been delivered, covers the entire loss. But we do not understand how the damages occasioned by the decline in the market value could cover a loss occasioned by shrink-age. Of course the instruction must be understood as only intended to give the plaintiff the difference between the amount of shrinkage which would have occurred had the train gone through in the usual time and that which actually happened. It was proved, or at least there was evidence to show, that the shrinkage between Wellsville (where the hogs were delivered for transportation), and St. Louis, their place of destination, was usually about six pounds, whereas the actual shrinkage in this case was about twenty pounds per head. The damages, therefore, author-ized by the instruction, supposing the testimony on the subject to have been satisfactory, would have been the value of fourteen pounds, and not of the entire shrinkage.

It seems that three of the hogs died in the car, of suffocation. By the special contract between plaintiff and defendand, it was agreed that defendant should not be responsible for any loss "by suffocation or other injury caused by overloading cars." It appeared that after the hogs were put on the cars at Wellsville, the train was detained at that place between seven and nine hours, that the weather was extremely cold, and that three of the hogs died of suffocation by piling up together before the train started. The instruction of the court in regard to these hogs that died of suffocation, was, that plaintiff was entitled to the difference in the value of the three hogs when alive and, when dead at St. Louis." The dead hogs were sold for $1.50 per cwt., and the live hogs at $3.75. This measure of damage was correct, if it was found that the suffication was traceable to the unnecessary or negligent delay of the train, but not otherwise; and whether it was so occasioned was a question for the jury, and the instruction should have been so modified as to leave that question to the determination of the jury. The second instruction asked by the defendant on this point was properly refused.

In regard to the lost hogs, the instruction given for the defendant is correct, and the only objection to the verdict on this head is, that there was no evidence to support it. As the judgment must be reversed on other grounds, it is unnecessary to consider this objection. The record presents no question in regard to allowing interest in the assessment of damages, a point discussed in the briefs of counsel. There is no mention of interest in any of the instructions, and the court, in its judgment, simply allows six per cent. interest on the judgment which our statutes directs, and which would follow if nothing had been said by the court on the subject. 1 Wag. Stat., p. 783, § 3. Judgment reversed and cause remanded. The other judges concur.

REVERSED.