The Chicago and Alton Railroad Co.

*v.*

Charles H. Erickson, use, etc.

1.  Common carrier—*liable for delay in taking cattle for transportation.* A railroad company as a common carrier is bound to receive and transport cattle when they are first offered for shipment, unless it has a reasonable excuse for its refusal, and when its refusal to take and ship cattle when first offered is without such excuse, it will be liable in damages to the owner for the deterioration in the value of the cattle between the time when they were first offered for shipment and the time when they were received and shipped.

2.  Same—*excuse for not taking and shipping cattle.* An unconstitutional law, prohibiting railway companies from carrying Texas or Cherokee cattle into or through the State, being void, will afford no excuse for a refusal or delay in receiving and shipping such cattle when offered. Such a statute can neither be regarded as imposing obligations nor as affording protection.

3.  Texas and Cherokee cattle—*act relating to, unconstitutional.* The act of the legislature in relation to Texas and Cherokee cattle, (Rev. Stat. 1874, p. 141,) is void, as being repugnant to that clause of section 8, article 1 of the Constitution of the United States, which provides that "Congress shall have power to regulate commerce with foreign nations, and among the several States, and with the Indian tribes."

APPEAL from the Circuit Court of Sangamon county; the Hon. CHARLES S. ZANE, Judge, presiding.

Messrs. HAY, GREENE & LITTLER, for the appellant.

Messrs. SCHOLES & MATHER, for the appellee.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

This was an action on the case, by appellee, against appellant, in the circuit court of Sangamon county, for damages sustained by appellee in consequence of appellant's failure, as a common carrier, to promptly receive and transport 42 head of cattle from Venice station, near St. Louis, to Springfield, Illinois.

The following statement, taken from the brief of the counsel for appellant, sufficiently presents the material facts:

"On the afternoon of Thursday, the 27th day of May, 1875, the cattle in question were brought across the Mississippi river at the upper or Madison county ferry, above St. Louis, in the cars of the Kansas City and Northern Railroad Company, and on the transfer boats of the ferry. They were landed at Venice, a station of the Chicago and Alton railroad, situated at the terminus of the ferry. While the cattle were yet in the cars of the Kansas City and Northern Railroad Company, the young man in charge (Erickson, plaintiff,) offered the cattle to the station agent of defendant below, for shipment to Springfield, Illinois. The agent of defendant declined to receive and ship the cattle, assigning as reasons that they were Cherokee cattle, and that, under the instructions of his superior officers, he could not receive them. This agent, however, referred the matter to his immediate superior, Mr. Lake, whose headquarters were at East St. Louis. Lake was telegraphed to come to Venice the same afternoon, but did not receive the dispatch till the next day. In the meantime the cattle were unloaded in the yards of the National Stock Yards Com-

pany, on the Illinois side of the river. The next morning Mr. Lake went to Venice, and after looking at the cattle and talking with Erickson about them, declined to receive them, for the same reasons given by the local agent, Nesbitt. Whereupon the cattle were taken back across the river and put into the Union Stock Yards, where they remained until the following Monday afternoon. On that afternoon the agents of the railroad company, under special instructions telegraphed from their superior officers in Chicago, forwarded the cattle to Springfield."

The damages claimed are such as resulted from the deterioration of the cattle between the time when they were offered for shipment and the time when they were received and shipped.

That appellant was bound to receive and carry the cattle, when they were first offered for shipment, unless it had a reasonable excuse for its refusal, is conceded by appellant's counsel; but they contend that it had such reasonable excuse for its refusal. They insist that the evidence shows that these cattle were " Texas or Cherokee cattle," and that, under the circumstances in proof, appellant was justified, by the provisions of the act in relation to "Texas or Cherokee cattle," (Rev. Stat. 1874, pp. 141-2-3-4,) in refusing to receive and ship them—at least, for the length of time it did so refuse.

If we were authorized to regard the provisions of the act referred to as valid law, it may be conceded the position of the counsel would be tenable and conclusive against the right of recovery by appellee, and, were we permitted to adhere to our own views of the validity of this act, such would necessarily be our ruling. *Yeazel* v. *Alexander et al.* 58 Ill. 254; *Chicago and Alton Railroad Co.* v. *Gasaway,* 71 id. 570.

But the Supreme Court of the United States, in *Railroad Company* v. *Husen,* (95 U. S.) 5 Otto, 465, have held that an analogous act of the legislature of Missouri is unconstitutional and void, because in conflict with that clause of § 8, art. 1 of the Constitution of the United States which provides that

"Congress shall have power to regulate commerce with foreign nations, and among the several States, and with the Indian tribes."

The suit there was brought in the circuit court of the State, against the carrier, for bringing "Texas, Mexican or Indian cattle" into the State, in violation of the statute which prohibited their importation except at certain seasons and under certain restrictions, and a recovery was had for the resulting damage to the plaintiff's property. An appeal was prosecuted from the judgment of the circuit court to the Supreme Court of the State. In that court the validity of the statute was sustained, but a writ of error was sued out of the Supreme Court of the United States to the Supreme Court of the State, on the judgment, and the judgment was by that court reversed.

An examination of the acts of Missouri and of this State will disclose that, so far as the principles controlling or affecting the decision of the Supreme Court of the United States are concerned, there is no substantial difference between the acts. This is expressly recognized by the judge pronouncing the opinion of the court in the *Husen case,* who, after referring to *Yeazel* v. *Alexander, supra,* says the court can not concur with the ruling in that case.

This question is one upon which the decision of the Supreme Court of the United States is paramount, and we are in duty bound to follow its rulings, however much we may in opinion disagree with them.

We have at the present term followed the decision in *Husen's case,*—*Salzenstein* v. *Mavis, ante,* 391.

The act, being void for repugnancy to the constitution of the United States, can neither be regarded as imposing obligations nor affording protection.

There being no reasonable excuse, in legal contemplation, shown for the refusal to carry, the judgment below must be affirmed.

*Judgment affirmed.*