Texas P. R'y Co. v. A. S. Nicholson et al.

(Case No. 5032.)

1. DAMAGES — COMMON CARRIER — RAILROAD COMPANY.— A parol contract by which a railway company agrees to receive cattle on its cars for transportation on a day certain, and which is violated by not having the cars as agreed on, may be made the basis of recovery against the company for all damages caused thereby. It cannot claim that its liability did not attach until the signing of a bill of lading for the cattle, which were delivered at a subsequent day, and after the contract had been violated. The liability of the company for damages was for a breach of contract, which made delivery of the cattle at the time specified impossible, and arts. 281, 282 and 283 of the Revised Statutes refer only to the liability of a common carrier after delivery of the thing to be transported and after signing a bill of lading therefor.

2. DAMAGES FOR BREACH OF CONTRACT.— Such damages for breach of contract may be allowed as are naturally the result of the breach, or as may fairly be considered as having been within the contemplation of the parties at the time the contract was made.

3. MEASURE OF DAMAGES.— When it is within the knowledge of a railway company that cattle which it has contracted through its agents to receive at a specified time and to transport to a particular destination are intended for sale on their arrival there, and the company, without fault of the owner of the cattle, violates the contract, and does not receive the cattle until a later period, whereby loss results, the difference between the value of the cattle at the place of destination when they should have arrived there under the contract, and when they did arrive there, is a measure of damage. If there is other deterioration due to the delay of the carrier, that must also be taken into consideration in estimating damage.

4. SAME.— The rule which makes the measure of damages the difference between the value of goods at the place of shipment, and their value at the point of destination, applies to cases where the goods are never delivered at all at their ultimate destination, and not where there has been loss sustained by the failure to start them on time from the point of shipping.

5. WAIVER.— When a railway company announces through its agent that it will not make a shipment at a time previously contracted for, a tender of the articles to be shipped at the time previously agreed on is thereby waived and rendered unnecessary to fix the liability of the company for resulting damages.

6. PRINCIPAL AND AGENT.— One will be bound by the contract made in his name by another, as his agent, when such other has been accustomed to make similar contracts for him, as his agent, with his knowledge and approbation, and which have been recognized and ratified by him.

Appeal from Tarrant. Tried below before the Hon. A. J. Hood.

Appellees brought suit to recover damages for a breach of contract in failing to receive and ship over appellant's railroad beef cattle from Colorado, Texas, to Chicago, Illinois. Plaintiffs charged that the defendant entered into a contract with them on the 12th day of May, 1882, by which it undertook to receive the cattle from plaintiffs on the 21st of May, 1882, at Colorado, and to furnish them necessary cars and transportation over its line to Chicago for market; that plaintiffs tendered the cattle on the 21st of May, 1882, and demanded of defendant that it receive them for shipment according to contract, and that defendant failed to receive them and perform the contract; that the shipment of the cattle was delayed until the 31st of May, 1882, and that by the breach of the contract plaintiffs sustained damages in the sum of $3,750.

Answer by demurrer, general denial and special answer, setting up a special contract in writing, providing that plaintiff should give written notice of his claim for damages, as a condition precedent to his right of recovery. Verdict of the jury and judgment in favor of plaintiffs for the sum of $3,618.51.

The court charged on the measure of damages as follows: " You will look to the following rules in estimating the damages: If there was before the receiving and shipping of the cattle unreasonable and negligent delay on the part of the defendant in receiving said cattle, then the plaintiffs should recover the difference, if any, between the market value of the cattle, if any, when they should have arrived at their destination, and when they did arrive, and also such damages, if any, as said cattle may have sustained by reason of delay in receiving and shipping; provided the testimony shows, and only in that event, that the shrinkage and deterioration in value, if any, was occasioned necessarily from the delay in receiving and shipping said cattle, and fairly entered into the contemplation of the parties to the contract at the time it was made."

A. S. Nicholson testified, in substance: That the defendant was a railway company on the 12th of May, 1882, and engaged in the business of carrying live stock from Colorado, by its own and connecting lines, to Chicago. That plaintiffs had purchased a herd of beef cattle prior to 12th of May, 1882, and that they were running on the range, about seventy-five miles from Colorado, that being the nearest shipping point for cattle, defendant having large pens there. That there were two hundred and fifty head of said cattle, worth $40 or $50 per head. That the range was good, being plenty of first-rate grass and water, while the grass and water were scarce at Colorado, and for that reason the plaintiffs wanted to have their

cattle shipped as soon as they reached Colorado. That on the said 12th of May, 1882, witness went to Mr. Bates, who was the regular stock agent at said place of Colorado, and told him that plaintiffs wanted to ship out their said cattle from Colorado on the 21st of the month, and told him that he wanted the defendant to have twelve cars ready, in which to ship plaintiffs' cattle, on said 21st of May, 1882. That Bates promised and agreed that if he would drive the cattle to Colorado on the 21st he would have the necessary cars to ship out said cattle promptly. That plaintiffs drove the cattle from their range and had them in the vicinity of Colorado on the 20th of May; that plaintiffs stopped the cattle three or four miles out of town, and upon the 21st, the day agreed on, notified the stock agent that the cattle had arrived and were ready for shipment. That the agent replied that he could not let me have the cars that day — that there were no cars on hand; but he thought witness could get them next day; that plaintiffs made same demand from day to day, until finally, on the 31st of May, 1882, defendant furnished the cars and shipped his cattle out to Chicago. During the time plaintiffs were waiting for the cars, from the 21st to the 31st of May, the cattle were held under close herd, there being no pens in which to confine them, and great scarcity of grass and water; they lost flesh and shrunk in weight, and deteriorated in condition to such an extent that they were damaged and their value decreased by at least $5 per head; that would be a low estimate. All railroad men knew that cattle could not be held at Colorado for ten days at that time without damaging them.

Cross-examined: Witness said that Bates was the stock agent at Colorado at the time he made contract for furnishing cars; had been recognized as such by the defendant; his acts as stock agent ratified by defendant. Bates had been stock agent at Colorado for some time; had his office at their depot, and had frequently made contracts for furnishing cars and shipping cattle, and defendant had always recognized his acts in making such contracts. When I demanded my cars on the 21st, Moore had superseded Bates as stock agent; Moore is still stock agent. When I demanded the cars nobody questioned Bates' authority to make the contract with me. I never drove my cattle to the pens until the day they were shipped; held them out several miles from town. It was not customary to drive cattle up to the pens when any one tendered them. A man would have been foolish to drive them up to pens when he knew he could not get them in, and run the risk of getting them stampeded by the engines. It was the custom there to hold cattle for shipment

out of town, and it was generally considered a sufficient tender to notify the agent of their arrival. The agents at Colorado all knew that my cattle were there waiting shipment. At the time he notified the stock agent that the cattle had arrived and were ready for shipment he "demanded the cars that had been agreed on, and that his said cattle be shipped."

The testimony was in some respects conflicting, and need not be stated at length.

*Davis, Beall & Rogers,* for appellant, on alleged error in main charge of the court as to measure of damages, cited: R. S., p. 49, arts. 281, 283, 284; Missouri Pacific R'y *v.* Douglass, Tex. Ct. App., reported in Tex. Law Review, November 27, 1883; Hutchinson on Carriers, §§ 94, 97, 122, 123, 126, 217, 240; Lawson on Carriers, pp. 132, 133; Southern Express Co. *v.* Dickson, 94 U. S., 549; Long *v.* New York Central R'y Co., 50 N. Y., 76; Belger *v.* Dinsmore, 51 N. Y., 166.

On tender they cited: Hutchinson on Carriers, §§ 96, 97; Wells *v.* R. Road, 6 Jones (Law), 47.

On measure of damages they cited: Sutherland on Damages (3d vol.), pp. 210, 211; Hutchinson on Carriers, § 774; Bridgman *v.* Steamboat Emily, 18 Iowa, 509; McGovern *v.* Lewis, 56 Pa. St., 231; Bell *v.* Cunningham, 3 Pet., 69; Bracket *v.* McNair, 14 Johns., 170; Harvey *v.* C. & P. R'y Co., 124 Mass., 421.

*Ball & McCart,* for appellee, on defendant's liability for breach of the parol contract cited: G., H. & S. A. R'y *v.* Watson, Ct. of App. Civ. Cases, 814; G., H. & S. A. R'y *v.* Douglass, id., 67; Harrison *v.* Mo. Pacific Railroad, 74 Mo., 364 (7 Amer. & Eng. R'y Cas., 382); Illinois Central *v.* Cobb, 64 Ill., 123; V. & M. R. R. Co. *v.* Ragsdale, 46 Miss., 458; T. W. & W. R. *v.* Lockhart, 71 Ill., 627; King *v.* Woodbridge, 34 Vt., 565; C., B. & Q. R'y *v.* Hale, 83 Ill., 360; Bridgman *v.* Steamboat Emily, 18 Iowa, 509; C. & A. R'y *v.* Erickson (33 Am. Rep., p. 70), 91 Ill., 613; Sutherland on Damages (vol. 3), pp. 208, 213; p. 219 as to detention of live stock; Field on Damages, 385–9.

On tender they cited: Smith *v.* Sherwood, 2 Tex., 462; 2 Greenl. Ev., 609, 611; 2 Parsons on Cont. (7th ed.), p. 777; Rudolph *v.* Wagner, 36 Ala., 698; Mattocks *v.* Young, 66 Me., 459; Stokes *v.* Recknagle, 38 N. Y. Sup. Ct., 368; Lacy *v.* Wilson, 24 Mich., 479; Bessling *v.* Hoyle, Ct. of App. Civ. Cas., 289; 2 Greenl. Ev., p. 782 (No. 694).

On measure of damages they cited: Harrison *v.* Missouri Pacific, 74 Mo., 364; Hutchinson on Carriers, sec. 771; Ogden *v.* Marshall, 8 N. Y., 340; 3 Sutherland on Damages, p. 219.

WILLIE, CHIEF JUSTICE.— The assignments of error relied on in the brief of appellant's counsel complain of the action of the court in giving and refusing charges, and of the want of evidence to support the verdict of the jury. The first complaint against the charge is that it holds the railroad company liable as a common carrier of cattle upon a parol agreement to furnish cars, when its liability did not attach until the signing of the bill of lading.

Arts. 281, 282 and 283 of the Revised Statutes are cited as sustaining the views of appellant's counsel. These sections merely provide that the carriers' common law liability as such shall commence from the time the bill of lading is signed; and that previous thereto they shall be liable only as warehousemen for goods placed in their depots or warehouses to be thereafter transported. They do not in terms or in effect exempt the carrier from such liabilities as he is subject to in common with all other persons, no matter what occupation they may pursue.

Here the effect was not to make the company liable as common carriers whilst the cattle were herded near Colorado City, but merely to subject it to a liability which an ordinary individual would be made to answer for under the same circumstances.

It is not necessary that a party should be a common carrier in order to make him responsible for violating a contract, nor does the fact that he is such by occupation relieve him from all accountability merely because he has not signed a bill of lading. When the bill is signed he becomes responsible as a common carrier, and must answer for all losses to the goods not resulting from the act of God or the public enemy, whether they occur in his warehouse where they are stored, or in the cars or vessels upon which they are being transported.

But a carrier may enter into a contract without a bill of lading, a part of which is to be performed before the goods are in a course of actual transportation by him, and in so far as such contract would be binding upon other persons it will be binding upon him also.

Had the appellees contracted for a sale of the cattle to a person living in Colorado City, the cattle to be received and delivered at that place on 21st May, the price to be their market value there on that day, and the delivery had been attempted, and the receipt of the

cattle had been refused under like circumstances as attended the present transaction, the vendee would have been liable for all the damages caused by the delay.    Ganson *v.* Madigan, 13 Wis., 67; Allen *v.* Jarvis, 20 Conn., 38; Dunston *v.* McAndrew, 44 N. Y., 72; 15 Wend., 493.

And so the railroad company is liable here for like damages caused by the detention of the cattle before they were actually received into their charge, that detention being in consequence of a refusal on their part to receive them according to an agreement previously made with the appellees.

The company could have recovered damages against the appellees had the latter failed to furnish the cattle at the time and place agreed on, and the company had been ready with their cars to receive them.    The responsibilities for breach of contract cannot rest upon one of the parties whilst the other is to reap its benefits only.

The second objection to the charge relates to that portion of it which instructed the jury that in case there was unreasonable and negligent delay on the part of the defendant in receiving and shipping the cattle the plaintiffs should recover the difference, if any, between the market value of the cattle at the time they should have arrived at their point of destination and the time when they actually did arrive.

There is no objection made to that portion of the charge that allows as further damages the deterioration of the cattle whilst detained at Colorado City.    It will not be necessary, therefore, for us to fortify by argument or authority a principle so well settled by both as not to be questioned in this appeal.    C. & A. R. R. Co. *v.* Erickson, 91 Ill., 613; Sturgeon *v.* R. R. Co., 65 Mo., 569; Bridgman *v.* The Emily, 18 Iowa, 509; Smith *v.* R. R. Co., 12 Allen, 531.

Ordinarily the damages allowed the injured party upon breach of contract are such as will compensate him for the loss he has suffered. What will compensate in any given case must depend upon its peculiar circumstances.    The rule now generally accepted is to allow such damages as must naturally result from a breach of the contract or as may fairly be considered to be within the contemplation of the parties at the time of making the agreement.

Applying this rule to the case of railroads who fail to deliver freight within a reasonable time, when it is within the knowledge of the company that it is transported for the purposes of sale at the place of delivery, the rule is that the difference between the value at such place at the time of delivering and at the time when it should have arrived, when the latter is the greater, forms one of

the items of damages. King v. Woodbridge, 34 Vt., 565; S. & M. R. R. Co. v. Henry, 14 Ill., 156; Cutting et al. v. G. T. R'y Co., 13 Allen, 381.

If there is other deterioration due to the delay of the carrier that must also be taken into consideration. Bridgman v. Ship Emily, 18 Iowa, 509; Sturgeon v. R'y Co., 65 Mo., 569. The principle which allows the difference in market value between the two periods of time as a measure of damages of course finds its almost universal application in the case of common carriers, as they do the principal, if not the entire, transportation of the country. But it does not proceed from the extraordinary care required of them by the common law, or any other stringent rules applied to them, but is equally binding upon any party who undertakes to do for another a specific thing within a specified time.

A manufacturer who agrees to make and deliver by a specified time certain articles which he knows are to be sold for profit by the party ordering them, must answer for delay to the same extent as the common carrier. And so, in the case already mentioned, of a delivery of the cattle at Colorado City to a party who had agreed to receive and pay the market price for them at a specified time, upon breach by the purchaser the same rule of damages would apply to him.

These instances are cited to show that there is nothing in the point made by appellant's counsel that the measure of damages does not apply when the delay occurred through the fault of the railroad company before they assumed the attitude of common carriers by signing a bill of lading. From the authorities cited by them, it seems to be claimed that the true measure of damages in the case of a common carrier is the difference between the value of the goods at the point of shipment and that at the point of destination; but this rule applies only in case the goods are never delivered at all, and not to a case where there is merely a delay in transporting them.

Had it been shown in this case that the freight money had not been paid, or that there were other means of transporting stock from Colorado City to Chicago, of which the appellees could have availed themselves, the rule of damages would have been modified; but neither of these facts appear in the case.

It is further urged that the court should have given the special charge asked by the defendant. This charge was to the effect that, to constitute a legal tender of the cattle, they must have been at Colorado City at the time agreed upon, and must then and there

have been offered for shipment under such circumstances as to require no further act on the part of the plaintiffs to make the transfer complete. As to this it may be said that the proof showed that the cattle were tendered in the manner which custom had established for such tenders at that place, and that a tender in any other way would have been unwise and injurious under the circumstances. But be this as it may, no question of tender can be made in this case. This was rendered unnecessary by the conduct of the company's agent in declining to ship the cattle, which amounted in law to a waiver of the tender. He did not decline because of an improper tender, but because it was simply impossible to receive the cattle for want of cars. A tender is rendered unnecessary where the party proposing it is informed in advance that it will be useless and will not be accepted. Rudolph v. Wagner, 36 Ala., 698; Mattocks v. Young, 66 Me., 459.

It is complained of the verdict that there was no proof that the person who contracted on behalf of the company to receive the cattle was authorized to make such a contract. We cannot concur in this statement. It was shown by Nicholson that this person (Barnes) had been stock agent at Colorado City for some length of time; had frequently made contracts of this kind for the shipment of cattle, which had always been ratified and adopted by the railroad company. He took orders for cars and received cattle at that point, and superintended the loading and shipping of cattle, and this was done with the knowledge and approbation of the appellant. This was proved even in stronger terms by another of the witnesses. It conflicted with the evidence of defendant's witnesses, but we cannot reverse upon such conflict, more especially as in this case the preponderance of testimony seems to be with the verdict. Harrison v. M. & P. R. R. Co., 7 Am. & Eng. R. R. Cases, 382.

It is also objected to the verdict that it is excessive. The jury seem to have made a very accurate calculation, based upon the minimum losses proved or admitted in the evidence, going, perhaps, a few dollars above the exact amount. But they would have been justified under the evidence in finding a larger sum, and we do not think that the appellant has any cause of complaint at the amount assessed against it by the jury. There is no error in the judgment and it is affirmed.

AFFIRMED.

[Opinion delivered May 2, 1884.]