CROSS & EDDY, RECEIVERS, v. T. A. GRAVES ET AL.

(No. 6868.)

APPEAL from Williamson County.   Opinion by WILL-SON, J.

FISHER & TOWNES, counsel for appellants.

J. W. PARKER, counsel for appellees.

§ **100.** *Common carriers; authority of station agent; failure to furnish cars; conditions in bill of lading held void; evidence; case stated.* This appeal is from a judgment for $240.25 damages recovered by appellees against appellants, the receivers of the Missouri, Kansas & Texas Railway Company, for the breach of a verbal contract whereby appellants, through their local agent at Taylor, Texas, contracted to supply appellees with two cars for the transportation of beef cattle from said place to Chicago, Illinois. Said cars were to be furnished on May 31, 1889, but were not furnished until June 3, 1889, and by reason of this delay in furnishing the cars the cattle were injured. It is an agreed case, and the agreement is as follows:

"In this case it is agreed that the plaintiffs below, appellees in this court, showed by competent testimony that they brought cattle to Taylor on the 31st day of May, 1889, for shipment, and were detained there for lack of cars until June 3, 1889, during which time their cattle depreciated in value by reason of such detention the amount of the judgment recovered; and that the

judgment herein shall be affirmed, unless the court shall be of the opinion either that the station agent at Taylor had no authority to make a verbal contract to have cars at Taylor for the shipment of such cattle at a given time binding on the appellants, or, second, that the provisions of the contract of shipment pleaded by the defendants are a bar to the plaintiffs' right to recover under the pleadings in this case on the facts herein agreed upon.

"Upon the first point,—that is, as to the authority of the agent to bind the company by a contract made with him to furnish cars on a given day,—the testimony was that K. Matthews was the local station agent of the receivers of the Missouri, Kansas & Texas Railway Company; that he represented the company in making all contracts for shipment of live-stock, and generally in all matters of receiving and discharging freight, and making contracts for the transportation of the same, and exercised all the functions usually incident to the position of station agent, and none others; that he agreed to have a sufficient number of cars at Taylor on the 31st day of May, 1889, to enable the plaintiffs to ship all of their cattle on said day. No special authority in Matthews to make such contract was shown in this case. An employee in his office testified that Matthews had no such authority, and had never made such contracts at any time, and that his instructions were not to make any such; that he was only authorized to receive applications to have cars at a certain time, and do what he could to procure them from the master of transportation; that in this case Matthews did apply to the master of transportation, and did all he could to procure the cars, but failed to get them in time. No witness examined had ever known him to make a contract to have cars at any given time. It did not appear that plaintiffs had notice of such instructions or want of authority in the agent to make the contract declared on by them.

"On the second point,—as to the release of the dam-

age sued for and the failure to give notice,— the allegations of the defendants' answer are as follows:

" ' (5) Further answering, these defendants say that on, to wit, the 3d day of June, 1889, they, through their agent at Taylor, K. Matthews, entered into a written contract with the plaintiffs herein with reference to the shipment of cattle about which this suit is brought. The said contract is dated Taylor, Texas, 6-3, 1889,— said figures meaning and representing June 3, 1889,— which contract was duly signed by the defendants through their agent, the said K. Matthews, and by the plaintiffs by F. A. Graves, acting for himself and co-plaintiff; same being executed in duplicate, one of which said copies is hereto attached, marked "Exhibit A," and prayed to be taken as part hereof. That said contract contains the following among other provisions: "Livestock contract, executed at Taylor station, Texas, 6-3-1889. This agreement, made between George A. Eddy and H. C. Cross, receivers of the Missouri, Kansas & Texas Railway of the first part, and F. A. & T. H. Graves of the second part, witnesseth, that whereas the receivers of the Missouri, Kansas & Texas Railway transport live-stock as per above rules and regulations, all of which are hereby made a part of this contract by mutual agreement between the parties hereto: Now, therefore, for the considerations and mutual covenants herein contained, the first party will transport for the second party the live-stock described below, and the parties in charge thereof as hereinafter provided, viz., ten cars said to contain two hundred and nineteen head of cattle, from Taylor, Texas, station, to Chicago, Ill., station, consigned to Grove Bros., at the rate of —— per ——, same being a special rate lower than the regular rate, or a rate mutually agreed upon between the parties hereto, for and in consideration of which the said second party hereby covenants and agrees as follows: ' *First.* That he hereby releases the party of the first part from the liability of a

common carrier in the transportation of said stock, and agrees that such liability shall be only that of a mere forwarder or private carrier for hire, and also hereby agrees to waive and release, and does hereby release, said first party from any and all liability for or on account of any delay in shipping said stock after the delivery thereof to its agent, and from any delay in receiving the same after being tendered to its agent.' '*Eleventh.* In consideration of the rates herein named and the aforesaid covenants, the shipper hereby releases and does waive and bar any and all causes of action for damages that have accrued to him by any written or verbal contract prior to the execution hereof. *Twelfth.* And it is further stipulated and agreed between the parties hereto that in case the live-stock mentioned herein is to be transported over the road or roads of any other railroad company, said party of the first part shall be released from liability of every kind after said live-stock shall have left its road, and the party of the second part hereby so expressly stipulates and agrees, the understanding of both parties hereto being that the party of the first part shall not be held or deemed liable for anything beyond the line of the Missouri, Kansas & Texas Railway, excepting to protect the through rate of freight named herein.' " That the said contract was not to be performed wholly within this state, but related to interstate commerce and traffic; that by its terms and provisions these defendants were not to be liable, as common carriers, for any damage done said stock beyond the line of the Missouri, Kansas & Texas road, which extends from Taylor, in Williamson county, Texas, to the city of Hannibal, Missouri.

" '(6) That the said contract was, as aforesaid, entered into by and between the plaintiffs and defendants herein, on the 3d day of June, 1889, and the plaintiffs herein, for a valuable consideration then and there received and accepted by them, therein covenanted and agreed to re-

lease, and did release, the defendants herein from any and all liability for any damage or injury to the said stock, or any of it, for or on account of any delay in shipping said stock after delivery thereof to its agent, as well as for any injury or damage arising from any delay in receiving the same for shipment after being tendered to its agent; and did also then and there, for a valuable consideration, release and bar and waive any and all damages, and any and all causes of action for any damages that had accrued to them, or which they had suffered by reason of any written or verbal contract between the plaintiffs and defendants, or the breach thereof prior to the said date; and these defendants here now plead said covenants and agreements against the plaintiffs herein in bar of their right to recover any damage, if any were ever suffered by them by reason of the violation and breach of the alleged contract, to have cars at the station in Taylor for the purpose of transporting said cattle, or by reason of any delay in receiving said cattle after the same were tendered for shipment, or by reason of any delay in shipping the same after they were received, and say all of said damages (if any were occasioned to plaintiffs) have been fully and amply satisfied and paid, and they are discharged from any further liability therefor.

" '(7) That said contract further provides as follows: "*Sixth.* That for the consideration aforesaid said second party further expressly agrees that as a condition precedent to his right to any damages, or any loss or injury to his said stock during the transportation thereof, or previous to loading thereof for shipment, he will give notice in writing of his claim therefor to some general officer of said first party, or to its nearest station agent, or to the agent at the delivery station on the railroad which carries the said stock to destination, or to the nearest station agent or general officer of such delivering road, before said stock is removed from the point of

shipment or from the place of destination, and before said stock is mingled with other stock, within one day after the delivery of such stock at its place of destination, and before the same shall have been removed, slaughtered or intermingled with other stock, to the end that such claim may be fully and fairly investigated; and that a failure to comply with the terms of this clause shall be a complete bar to any recovery of any and all such claims. The written notice herein provided for cannot and shall not be waived by any person except such general officer or station agent, and by him only in writing." By said contract of shipment it was further provided that plaintiffs herein, or their duly-appointed representative, should accompany said stock to Chicago for the purpose of looking after and caring for the same; that said party did accompany said stock, and was at Chicago when the same reached said point, and was then and there present at the time said stock was delivered by the railroad company to the consignee in said contract by the agent of said railroad company at said point; that there was then and there present at said time and place the said Breeding and the agent of the said delivering line of road, and the said stock; and the plaintiffs made no claim, either in person or by agent, for any damage, nor did they give any notice of any sort or kind that said stock had been damaged, or that they would make any demand or claim for damage or injury thereto. Wherefore these defendants say that by the terms and provisions of said contract plaintiffs are barred and precluded and estopped from setting up or maintaining any demand against these defendants such as is set out in their petition herein, and this they are ready to verify.'

"The testimony on these points was, first, the contract of shipment executed by the parties as alleged in defendants' answer on the 3d day of June, 1889, and which contract contained, among other things, the clauses and provisions alleged in the said portions of said an-

swer just as therein pleaded and the testimony of T. D. Jones, which was given over appellants' objections, as follows: 'The contracts exhibited here are the ones that were executed by the parties. They are in the usual form in use by the railroad company continuously since I have been in its employ, which was some time before these shipments were made. Every person who ships cattle over the railroad is required to sign one of them. The rate on the same class of cars is the same to every person who applies for shipment. The rates for different classes of cars differ, but the charge is the same for every person using any particular class of cars. This has been the case ever since I have been in the employ of the company. For instance, if you want a thirty-four foot car, I would quote you the same rate that I would to every person wanting the same kind of car. The length of the shipment controls the rate. The price of a thirty-four foot car would differ from that of a thirty foot; but cars of the same class are furnished to every one at the same price. I would have made the same price as that provided for in this contract to every man who desired to ship in the same class of cars for the same distance. We have a uniform price belonging to each class of cars for all shippers: that is, for all shippers who sign this sort of contract. This rate is a great deal lower than the local rate, and while each man gets the same reduced rate who ships upon a contract such as this, and this reduction is uniform to all such parties, it is given by virtue of the signing of the contract.' On cross-examination by the plaintiffs, witness states that the contract similar to the one in evidence would have to be signed by the shipper if he desired to ship only to the next station; that the rate for short hauls was greater in proportion to the distance than for long hauls. I do not know why they make this difference between long and short hauls,— the contract I suppose speaks for itself; but I know that it is made. On redirect exami-

nation by the defendants, witness said he did not know what the railroad company took into consideration in giving the reduced rate; that he could not say that the limitation of the liability did not enter into the reason for giving a lower rate; that these contracts had to be signed by all parties shipping cattle. All of which testimony of the witness Jones was admitted over the objections of defendants then and there interposed as follows: '*First.* That the written contract could not be varied, contradicted or explained by parol testimony. *Second.* Because there was no predicate for such proof laid in any pleading of the plaintiffs; and, defendants having affirmatively set up said contract in writing and its several terms and provisions in their answer, the plaintiffs could not impeach the same for want of consideration without having first attacked said contract by pleading verified by affidavit.'

"It is further agreed that the defendants had, in their answer, set out the several provisions of the contract as hereinbefore detailed, and the plaintiffs had filed no pleading of any sort in response thereto. As to the matter of notice, referred to in the seventh paragraph of the defendants' answer, hereinbefore set out, the proof was as follows: That one of the plaintiffs accompanied the cattle to Chicago, where they were received by the consignee, who paid the freight on them; that plaintiff did not know where the station of the delivering road at Chicago was, nor who was the station agent there of such road; that said road had no regular freight station nor station agent at the Union Stock Yards, where the stock was delivered to the consignee, though there was a small office there in which there was a party representing the railroad company, who renewed plaintiff's pass for his return. Appellees paid $1,260 as freight charges."

§ **101.** *Station agent; acts within apparent scope of authority bind carrier.* Before discussing the questions presented in the record, we call attention to the fact that

this is an action for damages for the breach of a verbal contract to furnish cars for the transportation of cattle at a time specified. It is not an action for the penalty prescribed by the statute for a failure to supply cars on written application therefor. [Sayles' Civil St., art. 4227a.] That this action is maintainable is well settled. [Railway Co. v. Nicholson, 61 Tex. 491; 2 Civil Cas. Ct. App., § 494.] It is claimed by appellants that their local agent at Taylor had no authority to make the verbal contract to supply the two cars; that their master of transportation alone had such authority, and that said local agent had their instructions not to make such contracts; but it did not appear that appellees had knowledge of such instructions, or of said agent's want of authority to make the said contract. It is conceded, however, that said agent "represented the company in making all contracts for shipment of live-stock, and generally in all matters of receiving and discharging freight, and making contracts for the transportation of the same, and exercised all the functions usually incident to the position of station agent and none others." We are of the opinion that the contract in question was within the apparent scope of the general authority of said agent, and that said contract is therefore binding upon appellants, although made by said agent contrary to their express instructions, appellees having no knowledge of such instructions. [2 Civil Cas. Ct. App., §§ 217, 727; 3 Civil Cas. Ct. App., § 457.]

§ **102.** *Common carrier; stipulations in contract of shipment; limitations of common-law liability held unreasonable and void.* It is further contended by appellants that the verbal contract, if made by authority binding upon them, was not made by them in the capacity of a common carrier; that it did not relate to the ordinary duties of appellants as common carriers, but to matters with regard to which they were free to contract, and as to which they are not bound by any of the rules,

regulations and limitations controlling common carriers; that, therefore, the stipulation in the subsequent written contract of shipment, releasing appellants from liability for damages, if any, which had been sustained by appellees because of the breach of the prior verbal contract to supply cars, was not a limitation of the common-law liability of appellants as common carriers. It may be conceded that appellants were not liable as common carriers until the signing of the contract of shipment. [2 Civil Cas. Ct. App., § 30; Sayles' Civil St., art. 283.] But the written contract of shipment was certainly entered into by them as common carriers, and must be subjected to the rules and regulations and limitations applicable to such contracts. The contract of shipment being interstate,— that is, not to be performed wholly within this state,— appellants were not prohibited from restricting and limiting their common-law liability by reasonable stipulations. [Sayles' Civil St., art. 278, and notes.] If, then, the stipulation relieving appellants from damages for injuries sustained by reason of appellants' breach of the verbal contract be a reasonable one, it should be sustained, and held to be binding upon appellees; otherwise it should be treated as void and disregarded. We are of opinion that said stipulation is unreasonable, oppressive and in violation of law. It required appellees, in order to obtain a shipment of their cattle, to release without consideration their right to damages which had already accrued to them. It was in effect demanding and extorting from appellees more for transporting said cattle than the regular freight charges exacted from other shippers. It was the duty of appellants under the law to receive and transport said cattle for appellees for the same rate of compensation demanded of other persons. [Id., art. 4258b.] In exacting from appellees the release of damages accrued to them by the breach of the verbal contract, appellants indirectly discriminated against them in the freight charges, and vio-

lated the law in so doing. We hold said stipulation to be void.

With regard to the stipulation in the contract of shipment which required appellees to give notice in writing of their claim for damages, we do not think that said stipulation, even if valid, as to damages which may have accrued after said contract was signed, can be applied to and held valid as to the damages claimed and recovered in this suit, — that is, damages which had accrued prior to making said contract of shipment. In so far as said stipulation relates to damages occasioned by the breach of the verbal contract, it is unreasonable and nugatory.

§ **103.** *Evidence; ambiguity in written instrument may be explained by verbal.* It was not error, we think, to admit testimony as to the consideration recited in the written contract of shipment, explaining that the lower rate of freight mentioned as the consideration of said contract was the regular rate charged all persons, according to the number and quality of the cars, distance to be transported, etc. This testimony did not vary or contradict the written contract, but merely explained an ambiguity in it. But, even if said testimony was illegal, its admission affords no ground for reversal, because, without regard to the consideration of the written contract, the stipulations therein, which we have discussed, and upon which appellants rely, are void for the reasons we have stated. We hold that there is no error in the judgment.

May 3, 1890.                                          Affirmed.