————o————

ELISHA C. RICE, Plaintiff in Error, *vs.* THE KANSAS PACIFIC RAILWAY, Defendant in Error.

1. *Damages—Railroads—Affreightment—Claim for damages to be made before unloading—Accident—Injury to stock—Delay in giving notice, claim not lost by, when.*—By a contract for the shipment of certain cattle on a railway, no claim was to be allowed the shipper unless "made in writing before ' or at the time the stock [was] unloaded." While *en route*, the cars were thrown from the track and part of the stock injured. After considerable detention the train proceeded to its destination, where it arrived in the rain about midnight. The owner then, before the unloading, verbally notified the company's yard-master and agent that he would not receive the cattle except under protest, and asserted his claim for damages without objection as to its form, and with the

assurance from the agent that it was unnecessary to proceed to the company's office that night. From the accident till then, he had been compelled to give his entire attention to the care of his stock. In consequence of the unfitness of the stock yard, and by consent of the company the cattle were, on the night of their arrival, removed to plaintiff's farm sixteen miles distant, where their examination by the company was not difficult. And, three days afterwards, he gave a written notice of his claim to an officer of the company, who refused to pay the same, insisting that the stock was not damaged, but making no objection on the ground of delay in the notice. *Held,* that the .proof showed a substantial compliance with the purpose of the contract, viz: to give an opportunity to the company for inspection of the stock, before they were mixed with other cattle or slaughtered, or its ascertainment of damages otherwise rendered impracticable; that the conduct of the company amounted to a waiver of the delay in giving the notice; and that under such facts shown, non-suit would be improper.

2. *Carriers—Liability, how far may be limited by special contract.*—The ancient rule of the common law is now so far relaxed as to allow carriers to limit their responsibility by special contract, save for their negligence or misconduct.

### Error to Jackson County Circuit Court.

*F. W. Black,* for Plaintiff in Error.

I. The rule is well settled that a common carrier cannot stipulate for exemption from responsibility for the negligence of himself or servants. Such contracts are void. (Railroad Co. vs. Lockwood, 17 Wal. 357 ; Levering vs. Union Trans. & Ins. Co., 42 Mo. 89 ; Wolf vs. Adam's Ex. Co., 43 Mo. 421 ; Ketchum vs. Am. Ex. Co., 52 Mo. 390; Read vs. St. L., K. C. & N. Mo. R. R., 60 Mo. 199.)

II. The provision in the contract, to-wit: "No claims for loss or damage on live stock will be allowed, unless the same is made in writing before or at the time the stock is unloaded," if it be literally construed, is unreasonable and void, and but an evasion of the general well settled rule. (Adam's Exp. Co. vs. Reagan, 29 Ind. 21 ; Southern Exp. Co. vs. Carpenter, 44 Ala. 101.)

III. In the case of Express Co. vs. Caldwell (21 Wal. 264), the agreement allowed ninety days from the delivery of the parcel to the company within which the claims might be made. And the court places its decisions upon the ground, that the limitation of the defendant's common law liability was a reasonable one.

In Goggin vs. K. P. Rly. Co., 12 Kas. 416, no claim was made in writing for more than a year after the cattle were unloaded, and it is there said : " But such a contract should be reasonable and not such as to be a snare or fraud upon the public." And under the circumstances of the case at bar, the claim was made in a reasonable time. Any further requirements must be held void, and unjust and unreasonable.

IV. There was evidence tending to prove the allegations made in the petition, and the court had no right to withdraw the case from the jury.

V. The petition alleges facts, sustained by the evidence, showing a waiver of notice in writing. It also tends to show that there was no agent at Kansas City who had authority to receive such notice.

*Pratt, Brumback & Ferrey,* for Defendant in Error.

I. The clause of the contract, that " no claim for loss or damage on live stock will be allowed unless the same is made in writing before or at the time the stock is unloaded," was valid and binding upon the parties.

The claim was not unreasonable or contrary to public policy. The evident object of it was to prevent false or exaggerated claims against the railway company, by requiring that they should have notice before or at the time the cattle were unloaded from the cars, in order that the company might have an inspection of the cattle before they were removed or mingled with others. Otherwise the cattle claimed to be injured might be slaughtered, or forwarded to other markets and scattered, before any claim was made, and thus the railway company be deprived of any opportunity of examining for themselves as to the extent of the injury, if any. (See Goggin vs. Kas. Pac. R'y Co., 12 Kas. 416.)

Nor was it an attempt to relieve the railway company from liability for its negligence, but simply a requirement that the shipper on his part should perform certain duties on condition of the special rates given to him. Such requirement is both reasonable and valid. (Bankard vs. B. & O. R. R., 34 Md. 197 ; Wolf vs. W. U. Tel. Co., 62 Penn. [St.] 83 ; Trask vs. Ins. Co., 29

Penn. [St.] 198 ; Cornell vs. Ins. Co., 18 Wis. 387 ; Express Co. vs. Caldwell, 21 Wal. 264.)

II. There is no legal evidence of any written notice ever having been given to respondent of appellant's claim, until the bringing of the suit.

Appellant wholly failed, by his own testimony, to show any excuse whatever for not giving the written notice of his claim to respondent, at the time of unloading the cattle—at least before removing them sixteen miles away. He testifies that they arrived at Kansas City at 11 o'clock p. m. of the night of the 15th ; that an agent of respondent was there ; that the cattle were unloaded by 2 o'clock a. m. that night ; that he then went to bed at State Line House and slept till morning ; that he then got some horses, took his cattle out and drove them to his farm sixteen miles away ; that a clerk of respondent was present at the time the cattle were unloaded and checked them out ; that he did not go to the respondent's office that night or the next morning, and that he never attempted to give any written notice till his return on Wednesday, three days afterward.

NORTON, Judge, delivered the opinion of the court.

This was a suit brought in the circuit court of Jackson county, for the recovery of damages to plaintiff's cattle, alleged to have been occasioned by the negligence of defendant, in its shipment of them, as a common carrier.

The petition states, in substance, that defendant received of plaintiff, for transportation, two hundred and fifty head of cattle, under a contract in which was the following stipulation : "No claim for loss or damage on live stock will be allowed unless the same is made in writing, before or at the time the stock is unloaded." It states that the cars, by neglect of defendant, were thrown off the track and three of the cattle killed and the remainder injured, and their transportation delayed seventeen hours ; that from the time of the accident till the train started, the whole of plaintiff's time was engaged in getting the cattle, that were thrown down, in the cars, up on their feet ; that when the cattle were unloaded plaintiff was required to assist in unloading them, and that he had no time or

opportunity to make written claim for damages sooner than was done by him ; that said written claim for damages was made two days after the unloading ; that defendant had no agent at State Line Station, to which place the cattle were shipped, to whom he could give his written claim.

The answer of defendant denies all the material allegations of the petition, and sets out at length the contract containing the stipulation as to claim for damages above quoted, and alleges that plaintiff did not give the notice required.    Plaintiff filed his replication denying the allegations of the answer.

On the trial a demurrer to the evidence of plaintiff was sustained, whereupon he took a non-suit with leave to move to set the same aside.    The motion of plaintiff to set aside the non-suit and grant a new trial was overruled, and final judgment entered, from which the plaintiff has appealed.

It is insisted by the plaintiff's counsel that the court erred in its action, first, because the stipulation that "no claim for loss or damage on live stock will be allowed unless the same is made in writing, before or at the time the stock is unloaded,"was unreasonable and void ; second, that the evidence offered showed a substantial compliance with the contract, and waiver as to the time in which the notice was to be given.

The rigid and severe rules of the common law, which held common carriers liable as insurers, and responsible for all loss to articles confided to them for shipment, unless such loss was occasioned by the act of God, or a public enemy, have been so far modified by an unbroken line of decisions as to allow carriers to limit their responsibility by special contract with their employers, provided such contract does not attempt to relieve him from liability for losses incurred by their negligence or misconduct.    It is too late to inquire into the policy or impolicy of this infringement on the rules of the common law.    It is the established law, and is so understood by those engaged in the business of common carriers and those who patronize them, and sound policy requires it to be adhered to.    (Ketchum vs. American Express Co. 52 Mo. 390 ; Levering vs. Union Trans. & Ins. Co., 42 Mo. 89 ; Reid vs. St. L., K. C. & N. R. R. Co., 60 Mo. 199.)    It has

also been held that stipulations, such as the one in question, do not contravene the rule that a common carrier cannot exempt himself, by contract, from liability for losses occasioned by his negligence, but that they are valid and binding between the contracting parties, provided they are reasonable and just. (Express Co. vs. Caldwell, 21 Wall. 264.)

When the fact is considered that cattle, when shipped, upon reaching their destination are usually commingled with other cattle, sold for slaughter, or reshipped to other points, it is not unreasonable for the carrier to stipulate with the shipper, that before claim for damages will be allowed he shall give proper notice, in writing, of his claim, at or before the unloading of the stock, or in such time thereafter as will afford the carrier an opportunity of inspecting the stock before they are commingled with other cattle, slaughtered, sold or reshipped, and thus protect himself from fictitious and unfounded claims. While, upon grounds like these, such special agreements are valid and binding, when they are reasonable, they should be reasonably and justly construed in their application to each case as it arises, in determining the question whether the required notice, both as to form and time, has been substantially complied with, or whether delay has been occasioned in giving the notice, by the acts of defendant, or whether compliance, as regards time or form, has been waived.

If, by the acts of defendant in this case, which produced an injury to the cattle, the shipper or plaintiff had been rendered insensible, and remained so for three days after the stock had been unloaded, and then presented his claim for damages, in writing, could the defendant be permitted coldly to reply, that the notice was not in compliance with the contract, and thus escape liability? We apprehend not. Such an application or construction of it would neither be reasonable nor just. Does the evidence in this case, to which the demurrer of defendant was sustained, establish facts which show a substantial compliance with the spirit of the contract, and the reason of it, or that delay in the mere time of giving the notice was occasioned by the acts of defendant, and that such notice, as to time and form, was

waived? The evidence tends to show that, by the carelessness of defendant, the train containing the cattle was thrown off the track, two or three of them killed, the remainder bruised and thrown down in the cars; that all of plaintiff's time was required in getting the cattle that were thrown down up on their feet, and that he was so engaged, with two other hands, till the train started; that the train was delayed seventeen hours, and reached the stock yard of defendant near midnight, in the rain; that the cattle were immediately unloaded and removed from the cars, and plaintiff was required by defendant to assist in unloading them, which he was bound to do by another stipulation in said contract; that before the unloading began he verbally notified the yard master and an agent of the company that he would not receive the cattle except under protest, and asserted his claim at that time for damages, without objection being made to the form of it; that the unloading was completed at two o'clock Sunday night; that plaintiff did not go to the office of the company that night, and was told by the yard master that it was unnecessary to do so; that it rained all night, and was raining next morning; that the yards of defendant in which the cattle were put were in bad condition, all mud, and that, by consent of defendant's agent, the yard master, he drove the cattle to his farm, sixteen miles distant, and returned the following Wednesday and made claim for damages in writing, to defendant's freight agent, who told him he had nothing to do with claims for damages; that the head agent at Lawrence would attend to that, and that if the freight was paid, which plaintiff was declining to pay, he would give him a pass to go to Lawrence, and he had no doubt the agent would do what was right; that plaintiff went to Lawrence on the pass given him, and the agent Gilman, to whom he had been referred, being absent, he left the claim for damages at his office. On returning a few days afterwards, Gilman said to him: "You have claim for damages?" and on receiving an affirmative answer, said: "Your cattle were not damaged at all! they were not damaged!" and declined to pay or settle.

If the above facts tend to show such a compliance with the terms of the contract as not to defeat the object for which it was

made, nor destroy the reasons which have influenced the courts to sustain such contracts at all, then the demurrer to the evidence was improperly sustained. The object of the required notice was to afford the defendant an opportunity to inspect the cattle, after claim for damages and before they were placed in a condition either by being mixed with other cattle, sold, slaughtered, or placed in such condition as to render such inspection impracticable.

The cattle in question by the consent of defendant and without the payment of freight were removed sixteen miles to the farm of plaintiff; the place they were in being an unfit place for cattle in their condition. By this removal the inspection of the cattle was not rendered difficult or impossible, but only more inconvenient, and this inconvenience was self-imposed, as defendant had a right to retain them till the freight was paid. This being considered in connection with the verbal notice given at the time the cattle were unloaded, and the fact that plaintiff was told by the agent of defendant having the cattle in charge, that it was unnecessary to go to the office of defendant that night, and with what was said to plaintiff by the freight agent at the time the written claim for damage was presented to him, and in connection with the fact that the agent at Lawrence after receipt of written claim made no objection as to time, but placed his refusal to pay on the ground that the cattle were not damaged, brings this case within the principle decided in the case of Philips vs. Protection Ins. Co., 14 Mo. 167, and Russell vs. State Ins. Co., 55 Mo. 585, and these facts should have gone to the jury for the purpose of showing substantial compliance, and waiver on the part of defendant as to the timeliness of the demand.

The first case above referred to was a suit founded on a policy of insurance in which it was required that in the event of loss the insured should forthwith give notice to the insurer; and judge Napton, remarked, "that it is difficult to lay down general rules on a question of waiver of notice, and it is better that each case should stand on its own peculiar facts. We are not disposed to

say that in all cases and under all circumstances the mere recep-
tion by the company of a notice without objection at the time,
and the additional fact of directly proceeding to investigate the
claim, would be conclusive evidence that the notice was a timely
one, and that the company waived any objection to the claim on
this ground. It might be that for the first time the importance of
an earlier notice would be discovered in the investigation, and if
then insisted on as a bar we could hardly infer a previous
waiver." In that case the notice was filed in twenty days after
the fire, and it was held a sufficient compliance with the require-
ment to give the notice forthwith.

The case of Russell vs. State Ins. Co., was a suit founded on
a policy containing a stipulation that the assured should fur-
nish to the insurer, within thirty days after loss, a particular
account or proof of loss.

The notice was not given till after the expiration of thirty days
and the court says; "If the delay was occasioned by the act of
defendant, or if the stipulation as to time of furnishing notice was
practically rescinded and treated by the defendant as of no im-
portance, such delay beyond the precise time fixed in the policy
could surely be explained at the trial, and in reality was proof
of the actual performance of the condition precedent, though not
exactly within the time fixed by the policy. Time is not usually
of the essence of any contract, and if it were, the party per-
forming it may surely show that delays were occasioned by the
acts of the party requiring the performance."

We think that the evidence in this case tended to show that the
acts of defendant did occasion delay in giving the notice, and
also that the agreement as to the time in which the written claim
for damages was to be made was practically rescinded and treated
by defendant as of no importance.

It also tended to show a substantial compliance with the spirit
and reason of the agreement upon which alone the validity of such
agreements are upheld and sustained at all.

Opposed to this view we have been cited to the case of Goggin
vs. Kansas Pacific Railway Co., (12 Kan. 416).

Rice v. The K. P. Rly.

The facts of that case are materially different from the facts of the case before us. In that case the required notice was not given for more than a year after the injury complained of was done, and no excuse was shown for not giving the notice within the time prescribed, except that at the time of unloading, plaintiff could not find writing material.

There was nothing to show that the delay in giving notice was brought about by any act of defendant, or that the time in which it was to be given was practically rescinded and treated as of no importance by defendant. In that case the court declares that the phrase "before or at the time of unloading," does not mean that it must be at the identical moment, but so immediately that the object sought by the notice can be attained.

From this expression the conclusion follows that if the notice had been given in such time that the object of the notice, viz: an inspection of the cattle before they were placed beyond the reach of inspection by defendant was accomplished, it must have been a compliance with the agreement.

In the case before us the evidence tended to show that verbal notice was given at the time of unloading; that defendant's agent told plaintiff it was unnecessary to go to the office that night; that written claim was presented in three days after the cattle by consent of defendant had been removed sixteen miles to plaintiff's farm, where an inspection of the cattle could have been had; that when presented, plaintiff was referred to the agent at Lawrence for settlement who put his refusal to settle the same, not on the want of timely notice but, on the ground that the cattle were not damaged—thus implying that he had investigated the claim.

We think that the court erred in sustaining the demurrer to the evidence, and therefore the judgment will be reversed and the cause remanded, the other judges concurring, except Judge Wagner who is absent.