The St. Louis, Kansas City & Northern Railway Company v. Cleary.

---

THE ST. LOUIS, KANSAS CITY & NORTHERN RAILWAY COMPANY v. CLEARY, *Appellant.*

1.  **Contracts Limiting Liability of Common Carriers.** A written contract, containing provisions limiting the liability of a railroad company, as a common carrier, in the transportation of cattle; *Held*, in the absence of fraud or mistake, to be the sole evidence of the final agreement of the parties, and binding upon the shipper, although signed by him after the cattle were loaded into the cars with a previous verbal understanding as to the terms of shipment, and presented to him for signature when there was no sufficient time for its examination before the departure of the train. Compare *Dawson v. The St. L., K. C. & N. R'y Co.*, 76 Mo. 514.

2. **An Instruction**, submitting a question of law to the court sitting as a jury, is properly refused.

3. **An Instruction**, which is, under the pleadings and evidence, a mere abstraction, is properly refused.

*Appeal from Carroll Circuit Court.*—HON. E. J. BROADDUS, Judge.

AFFIRMED.

*Hale & Eads* for appellant.

*Wells H. Blodgett* for respondent

NORTON, J.—This suit was instituted in the circuit court of Carroll county, to recover of defendant the sum of $125.50, for transporting six car loads of cattle from Kansas City to Norborne.

It is averred in the petition that plaintiff and defendant entered into a special contract in writing, whereby the plaintiff undertook to transport for defendant six car loads of cattle from Kansas City to Norborne at $20.50 per car, which it was averred was a reduced rate, in consideration of the undertaking and agreement of defendant to take care of said cattle while on the trip, load and unload the same at his own risk and expense, and that plaintiff should not be responsible for any loss, damages or injury which might happen to said freight in loading, forwarding or unloading, etc. It is also averred that in said contract defendant agreed that any claim for damages that might accrue under said contract, should be made in writing to the general freight agent of defendant within five days after the cattle were unloaded at the place of destination. It is also averred that plaintiff shipped said cattle in pursuance of the contract, and that defendant has failed and refused to pay the price agreed upon.

Defendant, in his answer, admitted that he executed the contract sued upon, but averred that before the same was executed by him, he had verbally agreed with plaintiff

as to the number of cars, the price to be paid per car, the time of shipping the stock and the manner in which they were to be shipped, and that after said cattle had been loaded in the cars under said verbal contract, and while the train was about starting, and did within a very few minutes thereafter start, the contract set forth in plaintiff's petition was presented to defendant for his signature and "under the impression that said written contract contained substantially the contract that had been previously agreed upon, the defendant, not having time to read the same before the train started, signed the same without any knowledge on his part that it contained the reservations and exceptions therein contained." The answer further set up, by way of counter-claim, that by reason of delays, occasioned by the negligence of plaintiff, defendant's cattle were injured to the amount of $250, which he asked to be set off against plaintiff's claim and for judgment in his favor for the balance.

The cause was tried by the court without the intervention of a jury, and judgment was rendered for plaintiff for $125.50, from which defendant has appealed to this court·

On the trial, evidence was introduced tending to prove the averments of the petition, and also evidence tending to prove the allegations of the answer, and the only ground relied upon for a reversal of the judgment is the action of the court in refusing the following instructions asked by defendant:

1. If the cattle referred to in the pleadings and testimony were actually loaded into the cars of plaintiff, as stated in the answer, before the alleged written contract was signed, and were received by the agent of the company with the previous verbal understanding as to the terms of shipment, then the rights and liabilities of the parties to said shipment were fixed, and the liabilities of plaintiff thereunder as common carriers were not modified or changed by said written contract.

2. The liability of plaintiff in this case is that of a

common carrier, and not a forwarder merely, and the stipulation to that effect in the alleged written contract, is void.

3.  The cause of action set up by the defendant in his answer and counter-claim is founded on the alleged wrongful, willful and negligent acts and conduct of plaintiff, and not on the written contract set up in the petition.

4.  If the defendant had not the time before the alleged departure of the train after the cattle were loaded, to examine the printed and written conditions of the written contract set up in the petition, and if defendant was leaving on said train with his cattle, to look after and care for same, then any conditions or stipulations in said contract inconsistent with plaintiff's general liability as a common carrier, are void.

While it has been held that a common carrier cannot stipulate against liability for damages resulting from and occasioned by his negligence, it has also been held, he can by special contract with the shipper, limit his liability. *Ketchum v. American Ex. Co.*, 52 Mo. 390; *Read v. St. Louis, K. C. & N. R'y Co.*, 60 Mo. 199; *Rice v. Kansas Pac. R'y Co.*, 63 Mo. 314; *Sturgeon v. St. Louis, K. C. & N. R'y Co.*, 65 Mo. 569. It was held in the case of *O'Bryan v. Kinney*, 74 Mo. 125, that "as a general rule, when goods are delivered to a carrier for transportation and a bill of lading or receipt is delivered to the shipper, he is bound to examine and ascertain its contents, and if he accepts it without objection, he is bound by its terms, and resort cannot be had to prior parol negotiations to vary them. That he, the shipper, did not read the bill of lading or know its contents, makes no difference; he might have read it and it was his duty to do so, and in the absence of fraud or mistake, the writing must be taken as the sole evidence of the final agreement of the parties." The same principle is announced in the case of *Mulligan v. Ill. Cent. R'y Co.*, 36 Iowa 181, where the terms of a bill of lading were sought to be evaded on

1. CONTRACTS LIMITING LIABILITY OF COMMON CARRIERS.

the ground that the shipper did not know its contents. It was held: "It not appearing that any fraud or imposition was practiced, or that any mistake intervened, the plaintiff must be conclusively presumed to have been acquainted with its contents, and if he did not do so, the consequences of his folly and negligence rest upon himself. Courts cannot undertake to relieve parties from the effects of such inattention and want of care. If once they should enter this doubtful domain, it is impossible to foresee to what lengths their interference might be pressed, or of what limit it would finally admit." The same doctrine is announced in the cases of *McMillan v. M. S. & N. I. R. R. Co.*, 16 Mich. 79.; *Grace v. Adams*, 100 Mass. 505 ; s. c., 1 Am. Rep. 131.

Giving force and effect to the above principles, the instructions numbered one and four were properly refused.

Instruction number two was properly refused, because it submitted a question of law and not of fact. Whether 2. AN INSTRUCTION. the liability of plaintiff was that of a common carrier as contradistinguished from that of a forwarder was determinable by the facts, and the facts upon which the liability of plaintiff as a common carrier were predicated should have been stated, so that the triers of the fact could determine whether such facts had been established by the evidence. It makes no difference in this respect that the cause was tried by the court without the intervention of a jury, and this has been so held in the case of *Cape Girardeau Co. v. Harbison*, 58 Mo. 90.

As to the third instruction, while it states correctly that the cause of action set up in defendant's answer by 3. ——. way of counter-claim, is founded upon the alleged negligence of plaintiff, it is nevertheless true that under the terms of the contract relied upon by plaintiff, defendant was bound to give notice in writing of his claim for damages to the general freight agent within five days after the cattle were unloaded, and it is not pretended that this was done, or any reason shown why it was not done,

and it, therefore, follows that no injury could have resulted to defendant by refusing an instruction which, when considered in connection with the pleadings and evidence, was a mere abstraction.

Judgment affirmed, in which all concur, except Juage RAY, who was of counsel in the case.