JANSON M. HOLTEN *et al.*, Respondents, v. KANSAS
CITY, FORT SCOTT & MEMPHIS RAILROAD
COMPANY, Appellant.

St. Louis Court of Appeals, February 12, 1895.

1. **Common Carriers:** EVIDENCE OF CONTRACT FOR SHIPMENT. In
the absence of fraud, a bill of lading constitutes the only evidence of
the final contract between the parties.

2. ———: VALIDITY OF OFFER TO CARRY FOR LESS THAN USUAL RATES.
*Semble*, that an offer of a railway company to carry goods below the
customary rate over railroad lines running through several states is
illegal, regardless as to whether it was made through mistake or with
the intention of violating the interstate commerce law.

3. **Contracts:** PROMISE WITHOUT CONSIDERATION. A promise to pay
an alleged claim is of no effect, if the claim is wholly without founda-
tion and the promise without any new consideration.

*Appeal from the Webster Circuit Court.*—HON. ARGUS
Cox, Judge.

REVERSED AND REMANDED.

*Wallace Pratt* and *J. C. Cravens* for appellant.

No brief filed for respondents.

ROMBAUER, P. J.—Upon the trial of this cause by
the court without a jury the plaintiffs, who are part-
ners, recovered judgment against the defendant for
alleged overcharges of freight which they were com-
pelled to pay in November, 1888, to the defendant,
and to other corporations whose railroads connect with
defendant's railroad. The defendant, who appeals,
assigns for error that the court admitted illegal evi-
dence for plaintiffs, that it gave erroneous instructions

for the plaintiffs and refused legal instructions asked by the defendant.

The plaintiffs' evidence tended to show the following facts: Warren, one of the plaintiffs, in October, 1888, wrote to the general freight agent of the defendant, inquiring for freight rates on certain articles from points on the defendant's railroad to Hot Springs in the state of Arkansas, and he received the following reply:

"KANSAS CITY, Mo., October 20, 1888.
"*Mr. T. A. Warren, Hot Springs, Ark.*

"DEAR SIR:—Yours of the 18th. Can quote you rates on oats C. L. all stations on our line to Little Rock 20 cents, hay 18 cents, per cwt. Rate to Hot Springs will be, on oats 18 1-2 cents, hay 13 cents, per 100 pounds higher than rate to Little Rock.

"Yours truly,
"M. L. SARGENT."

On further inquiry made by Warren, the general freight agent reiterated the quotation of rates on hay under date of October 27.

The plaintiffs' evidence further tended to show that they notified the defendant's general freight agent of the acceptance of these rates, and that on the faith thereof they shipped the car loads in question, and was compelled to pay freight thereon to an amount which, in the aggregate, was $244.40 in excess of what it would have been under the rates quoted in the above letter. The plaintiffs' evidence, however, concedes that each of these shipments was made under a bill of lading, which was the same in form as the bill of lading hereinafter referred to.

Against the defendant's objections the plaintiffs were permitted to show that the defendant had repaid to them some overcharges on smaller shipments, which

the plaintiffs had made about the same time in reliance on the above quotations. The plaintiffs were also permitted to show against defendant's objection that, some time after the shipments in controversy, the defendant's general freight agent promised to repay them all overcharges, above rates given as above, which were collected either by defendant or connecting roads up to June, 1889.

On the other hand, the defendant gave evidence tending to show that the freight rate given in the letter of October 20, 1888, was based on a mistake, and that the defendant at that date had no freight arrangement with roads leading from Little Rock to Malvern, and from Malvern to Hot Springs, but that the defendant had a freight arrangement with the Cotton Belt Railroad to Little Rock, and according to such an arrangement the tariff rate on hay from any point on defendant's road to Little Rock in October, 1888, was eighteen cents per one hundred pounds. The defendant further gave evidence tending to show that freight rates vary, and that the quotation of freight rates given on any given date merely applies to the rate at that date, and is subject to change at any time without notice. The defendant also gave evidence tending to show that each of the shipments, on which the overcharges are claimed in this suit, was made under a bill of lading, and that blank forms of such bills of lading are delivered to the shipper and are filled out by him.

The bills of lading under which these shipments were made contain in the left hand margin, at the head of the column, the words "rates guaranteed to * * *" and it was in evidence that the place to which any rate was guaranteed was not filled out in the bills of lading under which these shipments were made. These bills of lading contained the following recital: "Subject to the conditions and regulations of the printed

tariff of said company, to be transported over the line of this railway to Hoxie, Arkansas, and delivered, after payment of freight and advanced charges, in like good order to the consignee or party in whose care they are consigned or a connecting carrier, if the same are to be forwarded beyond the line of this company's road." It is conceded that Hot Springs is beyond the line of the defendant's road.

It is not necessary to set out in full the declarations of law asked by, and given for, the plaintiffs. They, in substance, declared that, if the defendant agreed with the plaintiffs on certain rates on the shipments in controversy to Hot Springs, Arkansas, and the plaintiffs, in order to get possession of the articles shipped, were compelled to pay higher rates, then the plaintiffs were entitle to recover in this action the overcharges thus paid.

The defendant asked the court to declare the law that the plaintiffs could not recover under the evidence; also that the bills of lading are conclusively presumed to embody the entire contract; and that, even if the defendant was liable to plaintiffs for overcharges, such liability could not extend beyond the first shipment, which the evidence showed had been settled. The defendant also asked the court to exclude from its consideration the plaintiffs' subsequent conversations with the defendant's freight agent, which were referred to above, and which occurred in June and July, 1889, and long after these shipments were made. All these declarations the court refused to make.

We have not the advantage of any brief on plaintiffs' part, as none has been filed, and are, therefore, not advised of the theory on which plaintiffs claim to uphold their recovery. Conceding, however, that the offer made to plaintiff Warren was one of which both the plaintiffs could avail themselves (on which propo-

sition we express no opinion), still, there are obstacles in upholding this recovery which are unsurmountable, among which we mention the following.

It is conceded that each shipment was carried under a bill of lading, which, as far as the evidence shows, is a complete contract. None of these bills of lading show that the rate was guaranteed to any point, and all of them purport to carry the merchandise subject to the conditions and regulations of the published tariff of the company, and then only to Hoxie, Arkansas, and no further. It is not pretended that these contracts were imposed on the plaintiffs by fraud, and under the decisions in this state they constitute the *only* evidence of the final contract between the parties. *Railroad v. Cleary*, 77 Mo. 634, 638; *Turner v. Railroad*, 20 Mo. App. 632; *Morgan v. Porter*, 103 Mo. 135; *Boyd v. Paul*, 28 S. W. Rep. 171. If the plaintiffs intended to rely on the *preceding* offer as a contract, it was for them to have its terms embodied in the bill of lading by filling out the rate guaranteed to a certain point. Outside of the legal considerations, it is evident that, had this been done, the mistake in the freight rate offered would have been at once discovered and subsequent complications would have been avoided.

The admission of evidence that certain overcharges were repaid by the defendant was clearly erroneous. It did not appear whether shipments on which such repayments occurred were made under bills of lading similar in tenor to the bills above referred to, and it did appear that connecting roads in those cases conceded the claim, so that the defendant lost nothing by the repayment. The declaration made by the defendant's freight agent in June, 1889, to the effect that the defendant would refund the charges now sued for were also inadmissible. They were unavailable by

way of estoppel, or as part of the *res gestæ*, as they were made long subsequent to the shipments in question. Nor does it appear that these promises were based on any antecedent legal obligation on part of defendant.

It has been recently decided by the supreme court of Kansas in *Chicago, etc., Railroad v. Hubbell*, 38 Pac. Rep. 266, that an offer to carry goods below the customary rate over railroad lines running through several states is illegal, and unenforceable against either of the connecting carriers, and that it is immaterial whether the rate given was a mistake or not, or whether either party intended to violate the interstate commerce law or not.

All the judges concurring, the judgment is reversed and the cause remanded.