D. M. WYRICK, Appellant, v. MISSOURI, KANSAS & TEXAS RAILWAY COMPANY, Respondent.

Kansas City Court of Appeals, April 4, 1898.

1. **Common Carriers:** LIMITATION OF COMMON LAW LIABILITY: CONTRACT: RECITAL PRIMA FACIE.   A common carrier by a fair contract on sufficient consideration may limit its common law liability, and the recitals of such limitations in the contract are *prima facie* evidence thereof, which, without further evidence, become conclusive.

2. ———: SIGNING CONTRACT: DEFENSE.   A shipper must read his contract and his failure to do so is no defense in the absence of fraud.

3. ———: EVIDENCE OF LEGAL RATE:   INTERSTATE COMMERCE LAW. Every shipper must be presumed to know the existence of the schedules for interstate rates fixed by the interstate commerce commission and whether the rates charged by the carrier were the regular tariff rates or not.   And in this case the contract *prima facie* establishes that there was a greater rate than the one charged in such contract.

4. **Trial Practice**: RECALLING PLAINTIFF FOR FURTHER CROSS-EXAMINATION. After plaintiff closes his case it may be irregular to recall the plaintiff for further cross-examination; but where he is permitted to introduce further evidence relating to the matters covered by such examination, no injury can result.

5. **Common Carriers**: PLEADING: SPECIAL RATES: CONSTRUCTION OF CONTRACT. An answer pleaded two rates per car and fixed the lesser at $47 for standard cars. Plaintiff paid $51 for stable cars. *Held*, the exacted rate was not illegal.

*Appeal from the Pettis Circuit Court.*—HON. GEO. F. LONGAN, Judge.

AFFIRMED.

SANGREE & LAMM and MONTGOMERY & MONTGOMERY for appellant.

(1) This is a suit sounding in tort for a breach of defendant's common law duty as a common carrier, and plaintiff made a *prima facie* case by proof of delivery for shipment, failure to redeliver at destination and the value of his stock. Clark v. R. R., 64 Mo. 446; Davis v. Jacksonville S. E. Line, 126 Mo. 69; George v. R. R., 57 Mo. App. 363. However, defendant may, as in this case, plead by way of defense a special contract reasonably limiting its liability. Okey v. R. R., 65 Mo. 629, and cases cited. (2) And such contract when "fairly and understandingly" made and entered into by plaintiff without "imposition or deceit" is *prima facie* evidence of the truth of its recitals, if sustained by a valuable and legal consideration. McFadden v. R. R., 92 Mo. 343; Hart v. R. R., 112 U. S. 331; R. R. v. Lockwood, 17 Wall. 379; Harvey v. R. R., 74 Mo. 538; Crow v. R. R., 57 Mo. App. 135; Kellerman v. R. R., 68 Mo. App. 255; see s. c., 136 Mo. 177; Duvenick v. R. R., 57 Mo. App. 550; Paddock v. R. R., 60 Mo. App. 328; Coupland v. R. R., 61 Conn. 531; Ballou v. R. R., 17

R. I. 441; McFadden v. R. R., 92 Mo. 343, *supra;* and cases there cited on page 351; see also cases cited under point 2, *supra.* (3) The presumption, if any, raised by such recital in the contract in favor of the existence of a reduced rate and of the existence of a higher and regular rate "legally in force for practicable application for all those who refuse to enter into a release contract," is so weak, frail and shadowy that the courts have held that on defendant carrier rested the burden of affirmatively showing that such two rates actually existed as set forth in the contract, and were legal. Duvenick v. R. R., 57 Mo. App. 550; Paddock v. R. R., 60 Mo. App. 328; see especially, Rosenfeld v. R. R., 103 Ind. 121. (4) A *prima facie* case is overcome by the introduction of any evidence which, if believed, would warrant a contrary finding on such issue. Long v. Long, 44 Mo. App. 141. (5) There is not a scintilla of evidence to show that a $94 rate to Vinita, per car, was legal or allowable, or had any existence in fact. See an act to regulate commerce, passed by the national congress, approved February 4, 1887, section 6, *et seq.*, commonly known as the Interstate Commerce Act. (6) Again, the court erred in giving the peremptory instruction, because, under the pleadings and evidence, the rate charged, $51.70, was more than the rate pleaded by defendant, $47, as the regular tariff rate at owner's risk, hence it was confessedly illegal and is no sufficient consideration to support the contract. Paddock v. R. R., 60 Mo. App. 328; Holten v. R. R., 61 Mo. App. 204; Interstate Commerce Act, *supra.* (7) It was error for the court, as the pleadings stood, to allow the defendant, after plaintiff had first rested, to recall plaintiff under a pretext of a re-cross-examination, and, in connection therewith, to introduce the alleged contract.

GEO. P. B. JACKSON for respondent.

(1) The parties might lawfully stipulate, as in the contract in this case, that the value of the jacks was not more than $100 each. McFadden v. R. R., 92 Mo. 343; Hart v. R. R., 112 U. S. 331; Rogan v. R. R., 51 Mo. App. 665; Duvenick v. R. R., 57 Mo. App. 550; Kellerman v. R. R., 136 Mo. 177. (2) There was neither allegation nor proof of fraud in procuring the contract in this case. The plaintiff signed the duplicate copies of the contract, and took one of them with him; and he will not now be heard to claim that he did not read the contract or did not know its contents, where no deceit, fraud or imposition is charged. McFadden v. R. R., 92 Mo. 343–350; Kellerman v. R. R., 136 Mo. 177–188 to 189; Snider v. Exp. Co., 63 Mo. 376–383; Patterson v. R. R., 56 Mo. App. 657; O'Bryan v. Kinney, 74 Mo. 125; R. R. v. Cleary, 77 Mo. 634. And that the contract was only presented for signature when the train was about to start does not destroy its binding force as a contract. Leonard v. R. R., 54 Mo. App. 293; McFadden v. R. R., 92 Mo. 343–350; R. R. v. Cleary, 77 Mo. 634. (3) The statement in the contract that the rate is a special one and lower than the rate charged when shipments are made without the limitation on value, is *prima facie* evidence that the rate is such. McFadden v. R. R., 92 Mo. 343–351; Hart v. R. R., 112 U. S. 331. A reduced rate is a good consideration for limiting the value. Rogan v. R. R., 51 Mo. App. 665; Duvenick v. R. R., 57 Mo. App. 550; Kellerman v. R. R., 136 Mo. 177.

SMITH, P. J.—This was an action *ex delicto* brought by plaintiff against defendant for a breach of the duties imposed upon it as a common carrier by the common

law, in that plaintiff had intrusted to it at Green
Ridge, in this state, four jacks which it undertook to
deliver at Vinita, in the Indian Territory, and had
failed to do so, to the damage of plaintiff in the sum of
$2,000. The answer of the defendant, amongst other
allegations, contained the following:

"Further answering, the defendant says that it had
two rates for the shipment of live stock; that it had
prepared, published and filed with the
interstate commerce commission its tariff
sheets, which were recognized as valid and reasonable
by said commission; that defendant had fixed, and in
its said tariff sheets had published, a rate which was
called the regular rate, or the rate at carrier's risk,
which was at the sum and amount of ninety-four dollars
($94), per standard car for the shipment of property
of the kind referred to in the petition from the station
of Green Ridge, in Pettis county, Missouri, to Vinita,
in the Indian Territory; that this rate for shipment
at the carrier's risk, referred to and spoken of, as the
regular rate, was the usual and customary rate that
was charged in all cases where the shipment was made
at the risk of defendant as the carrier, and was the
rate at which the defendant, as a common carrier,
could be required to accept and transport freight of
that kind offered to it to be transported under the
ordinary common law duties and liabilities of a carrier.
But the defendant further says that in said tariff
sheets so prepared, published and filed as aforesaid
there was another rate of forty-seven dollars ($47)
per standard car between the above named points, or
one half of the regular rate when shipped at the car-
rier's risk, which was known as the tariff rate for
shipments at owner's risk of property of the kind
mentioned in the petition, and which such reduced
tariff rate was given as a consideration for fixing the

Answer.

valuation of live stock so shipped at a definite sum, and for the shipper assuming the risk of loss for all, if any, value that stock might have over such fixed or liquidated amount. The defendant further says that it always was, and is, optional with shippers in general, and especially was optional with the plaintiff at the time of the shipment here in question, whether he would pay the higher rate, and have the stock shipped at the risk of defendant as the carrier thereof, or whether he would pay the lesser rate and fix the value of said stock at a definite sum, and assume the risk of loss, if any, over and above that sum.

"Further answering, the defendant says that on or about the third day of April, 1895, the plaintiff represented that he desired to ship four mules over the defendant's railway from Green Ridge, in Pettis county, Missouri, to Vinita, in the Indian Territory, and he thereupon elected to have the same shipped at the lesser or reduced rate at the owner's risk, and upon a fixed valuation upon the animals shipped; that the rate charged for the said shipment was the said lesser rate of forty-seven dollars ($47) per standard car. And thereupon the plaintiff and the defendant, acting through its agent, entered into a written contract for the shipment of said animals from Green Ridge, Missouri, to Vinita, in the Indian Territory, at said reduced and special tariff of forty-seven ($47) and, in consideration of the defendant agreeing to carry said animals at the rate of said reduced or special tariff, it was expressly stipulated and agreed in said contract as follows: * * * In consideration of said special agreement by the carrier it is further mutually agreed and stipulated as follows: * * * 8. The carrier does not ship cattle * * * under this contract or at the rate herein given which exceed in value the following prices per head: Each pony * * * or

jack, $100.  *  *  *  And across the face of said contract was also written the following words: "More or Less, s. l. & c. OR Rel to val. of $100 Each."

The answer contained a further allegation to the effect that the contract from which we have just quoted was duly signed by plaintiff and defendant and that if plaintiff suffered any loss on account of said shipment his damages were limited to $100 for each of the said four jacks so shipped, etc. The receipt and failure to deliver the plaintiff's jacks were, in effect, admitted by the answer.

The replication alleges that after plaintiff's jacks were loaded on defendant's car, and as the train was about to leave, the defendant's agent produced the said specially pleaded contract and requested the plaintiff to sign the same at a time when he had no opportunity to read its numerous intricate provisions of which he was wholly unaware, and that he did not intentionally or willingly agree to the same, though he admitted that he signed the same. There was a general denial of all the other allegations of the answer.

REPLY.

There was a trial and at the conclusion of the evidence adduced the court gave an instruction in the nature of a demurrer which declared that the plaintiff could not recover more than $100 per head for the jacks shipped. There was judgment accordingly for plaintiff from which he appealed.

The questions which we are required to determine arise out of the action of the trial court giving the said instruction for defendant. It is conceded in a case of this kind that the carrier may plead by way of defense a special contract reasonably limiting its liability. Okey v. R'y, 65 Mo. 629, and cases there cited. The rigid rules of the common law which held common

COMMON carriers: limitation of common law liability; contract: recital prima facie.

carriers liable as insurers have been so far modified by an unbroken line of judicial decisions as to allow them to limit their liability by special contract with their employers, provided such contract does not attempt to relieve them of liability for losses incurred by their negligence or misconduct. Rice v. R'y,. 63 Mo. 314; Ketchum v. Express Co., 52 Mo. 390; R'y v. Cleary, 77 Mo. 634; Read v. R'y, 60 Mo. 199; Sturgeon v. R'y, 65 Mo. 569. It is, too, the well settled law of this state that such contract when fairly and understandingly entered into without imposition or deceit, is *prima facie* evidence of *the truth of its recitals if sustained by a valuable and legal consideration.* McFadden v. R. R., 92 Mo. 343; Harvey v. R. R., 74 Mo. 538; Crow v. R. R., 57 Mo. App. 135 (see page 140); Kellerman v. R. R., 68 Mo. App. 255; see s. c., 136 Mo. 177; Duvenick v. R. R., 57 Mo. App. 550; Paddock v. R. R., 60 Mo. App. 328. Or, in other words, the recitals in such contract that the rate is a special one and lower than that charged on shipments without limitation in. value is *prima facie* evidence of the truth thereof. Such recitals are open to explanations or contradiction, but unless they are explained away or contradicted by evidence they become conclusive. McFadden v. R'y, *supra;* Hart v. R'y, 112 U. S. 351. A special or reduced rate is a sufficient consideration for a limitation placed on the value of the property shipped. Rogan v. R'y, 51 Mo. App. 665; Duvenick v.. R'y, 57 Mo. App. 550; Kellerman v. R'y, 136 Mo. 177.

The contract which was put in evidence recites that: "This company *has two rates on live stock.* Ordinary live stock transported under this special contract is accepted and hauled at rate named below at owner's risk as per conditions herein set forth, with the distinct understanding that said rate is a special rate which is

hereby agreed to, accepted and understood to be less than published tariff rate applying thereon when transported at carrier's risk." There is a further provision in said contract stipulating that defendant was to haul the car in which the plaintiff's animals were loaded to the place of consignment, "subject *to minimum weights and length of cars provided for in tariff, the same being a special rate, which the carrier guarantees, and less than the regular tariff rate applying to shipments of cattle not covered by this special contract."* And in the same connection is also the provision pleaded in the answer which, in substance, is that in consideration of said special agreement it was mutually agreed that the defendant, "does not ship cattle * * * under this contract or at the rate herein given which exceeds in value the following prices per head: Each * * * jack, $100;" and that, "in case of loss or damage the shipper represents and agrees that his said cattle * * * do not exceed in value these prices, and in case of any loss or damage thereto by carriers' negligent transportation or handling of said cars, as aforesaid, shippers shall be entitled to receive only actual damages *but in no instance more than the stipulated valuation shown above."*

It is thus seen that we have the joint recital of the parties to the contract of the fact that the defendant had two rates which it published upon its tariffs—the one the tariff rate for shipments at the carrier's risk which was the higher rate and made the defendant liable for the full value of the property lost, and the other, the reduced or lower rate, applying only to shipments made under special contracts in which there was a limitation on the value.

The recitals in the contract *prima facie* established that the plaintiff shipped his animals in consideration of a special or reduced rate. And since these recitals

are not contradicted or overthrown by any evidence in the case they must be deemed conclusive. The plaintiff testified that he inquired of the station agent of the defendant what a stable car would cost to Vinita, and was told the rate was $51.70. He also testified that no other rate was mentioned, nor was anything said in relation to limiting the defendant's liability, nor was anything said about valuing the plaintiff's jacks at $100, or at any other sum, but this testimony did not contradict the recitals in the contract, nor show that the rate charged was not a reduced rate. It was immaterial, however, whether or not there was anything said at the time of the shipment between the parties as to the value of the jacks or the rate, for whatever may have been said was merged in the printed contract subsequently entered into, which must be taken, in the absence of fraud, as the sole agreement of the parties as to everything incorporated in it. Kellerman v. R'y, *supra*, and authorities there cited.

But the plaintiff insists that although he signed the contract of shipment he did not then know its provisions; that he was afforded no opportunity to read the same before he signed it. It was no doubt true, as testified by him, that the contract was not presented to him for execution until after the jacks were loaded on the car. But it must be remembered that the statute, section 2593, Revised Statutes, requires the agent of a railway carrier to count the stock when loaded and to state the number in the contract (George v. R'y, 57 Mo. App. loc. cit. 362), and therefore the contract could not have been signed until after these duties were performed. As far as we have been able to discover, from a perusal of the evidence, there is nothing in the case to justify the conclusion that any trick, artifice or fraud was practiced by defendant in procur-

ing the plaintiff's signature to the contract. According to the plaintiff's own testimony there was nothing unusual or extraordinary in the circumstances or conditions under which he signed the contract. The rule is well settled that it is the duty of a shipper to read the contract of affreightment and his failure to do so is no defense to its stipulations in the absence of fraud, imposition or mistake. McFadden v. R'y, *supra;* R'y v. Cleary, *supra;* O'Bryan v. Kinney, 74 Mo. 125; Snyder v. Express Co., 63 Mo. 376; Kellerman v. R'y, 136 Mo., *supra;* Rice v. R'y, 63 Mo., *supra;* Patterson v. R'y, 56 Mo. App. 657. In the first of the last above cited cases it was said: "This court has heretofore held that all prior verbal negotiations between the parties are merged in the written contract and that the plaintiff can not admit the execution of the contract and avail himself of the fact that he did not read the same or know its contents, where no mistake, fraud, imposition or deceit is charged to have occurred." In another case (O'Bryan v. Kinney, 74 Mo., *supra*) it was said: "As a general rule when goods are delivered to a carrier for tranportation and a bill of lading or receipt is delivered to the shipper, he is bound to examine and ascertain its contents, and if he accepts it without objection he is bound by its terms, and resort can not be had to prior parol negotiations to vary them. That he, the shipper, did not read the bill of lading or know its contents makes no difference; he might have read it and it was his duty to do so and in the absence of fraud or mistake the writing must be taken *as the sole evidence of the final agreement of the parties.*" In R'y v. Cleary, *supra,* it was said: "It not appearing that any fraud or imposition was practiced, or that any mistake intervened, the plaintiff must be conclusively presumed to have been acquainted with its contents, and if he did not do so the consequences of his folly and negligence rest on

himself. Courts can not undertake to relieve parties from the effects of such intervention and want of care. If once they should enter this doubtful domain, it is impossible to foresee to what lengths their interference might be pursued, or of what limit it would finally admit.''

If the plaintiff did not know the contents of the contract, and if the time intervening between the loading of the jacks on the car and the starting of the train was so short as not to afford plaintiff a reasonable opportunity to read the same and acquaint himself with its contents he should have objected and refused to then sign it. But if instead of taking this course he elected to sign it he can not be permitted to evade its terms on the ground that he did not know its contents. He must suffer the consequences of his own folly and imprudence.

The plaintiff objects that there was no evidence introduced by defendant to show that a $94 rate to the place of consignment per car was legal or allowable or had any existence. This is a case of in——: evidence of terstate shipment and therefore the
legal rate: inter-
state commerce statute of this state is inapplicable. The
law.
interstate commerce act—approved February 4, 1887—requires carriers to charge reasonable rates; and also requires the interstate commerce commission to determine whether the rates charged are reasonable. The duties imposed upon carriers in fixing their rates, filing and posting the same in relation to interstate shipments are controlled exclusively by the act of congress referred to. In the absence of proof to the contrary, as here, we must presume that the defendant has performed the duty of fixing its tariffs on interstate shipments and filing the schedule thereof, and that the ''interstate commerce commission'' has likewise performed its duty in respect to

such tariffs.   These schedules are not a part of the law
itself but are the results of the acts of the carrier and
the "interstate commerce commission" in the execu-
tion of the law.   Every shipper must be presumed to
know the existence of the schedules and that they are
open for inspection.   Gerber v. R'y, 63 Mo. App. 145.
The plaintiff knew, or by the exercise of ordinary
prudence could have known the regular tariff rate
which defendant was allowed to charge on his proposed
interstate shipment.   He must be held to have known
that the rate which he was charged by the defendant
was not the regular tariff fixed by defendant and the
interstate commerce commission.   The recital in the
special contract is that the rate charged was less than
the regular tariff rate when such contract did not ap-
ply.   This in itself, we think, has the effect of stating
that there was a regular tariff rate for shipments not
covered by special contracts, and that the rate charged
was less than such higher rate and therefore the recit-
als in the contract were *prima facie* evidence of the
fact that there was a higher legal rate than that
charged, and that the latter was a reduced rate and
hence a sufficient consideration for the exemption from
liability for the loss of each jack shipped beyond the
$100.   In our opinion ample proof of the existence of
the greater rate than that charged is to be found in the
recital of the contract itself.

The plaintiff further objects that the court erred
in its action permitting the defendant, after the plain-
tiff had first rested, to recall plaintiff for the purpose
of re-cross-examination, and, in that con-
nection, to introduce the special contract
in evidence.   This may have been some-
what irregular, still, inasmuch as the plain-
tiff was permitted to afterward introduce further
evidence relating to the matters covered by the

TRIAL practice:
recalling plain-
tiff for further
cross-examina-
tion.

re-cross-examination and the co ntract, no injury thereby resulted to plaintiff.

The plaintiff insists that since the answer alleged the lesser rate was $47 and the proof was that the plaintiff paid $51.70 the rate exacted was confessedly illegal. It will be seen that the allegation of the answer was that the $47 rate was for standard cars for shipments made under special contracts. The contract recited that this charge was subject to minimum weights and lengths of cars. This shows the rate was based on the smallest cars or the smallest loads. The evidence was that the car used by plaintiff was a stable car which was longer than a standard car, and from this we may fairly infer that the difference between the rates arose out of the difference in the lengths of the cars. We therefore think this insistence without force.

COMMON carriers: pleading: special rates: construction of contract.

There are several other assignments of error called to our attention in the brief of counsel but these we find on examination can not be sustained.

It is our conclusion that the action of the court in giving the defendant's instruction was not error, and it results that the judgment will be affirmed. All concur.