E. RUSSELL and ANNIE M. RUSSELL, Partners Doing Business Under Name of E. RUSSELL & COMPANY, Respondents, v. QUINCY, OMAHA & KANSAS CITY RAILROAD COMPANY, Appellant.

Kansas City Court of Appeals, February 16, 1914.

1. CARRIERS OF GOODS: Railroads: Baggage. The plaintiff, a traveling man, sued to recover the value of two telescope bags and their contents, which were destroyed while in possession of defendant. The defendant agreed after they had failed to load the baggage on a certain passenger train to send them on a freight, and gave the plaintiff a bill of lading. While en route the car was wrecked and the bags destroyed. *Held*, that the refusal of defendant to accede to the request of plaintiff to place the value of the goods in the bill of lading, followed by the acceptance of the goods as an extraordinary shipment constituted a waiver of strict compliance with the terms of shipping contract.

2. ———: ———: Contracts. After a contract of shipment is signed and delivered, neither party has authority to change or vary it by insertions or interlineations in the copy retained by him.

3. EVIDENCE: Bills of Lading. A bill of lading or receipt should be taken as the sole evidence of the final agreement of the parties respecting the shipment.

4. ————: **Special Agreement.** It is competent for a party to adduce evidence tending to prove that a special agreement was made for the transportation of jewelry as freight for a reasonable consideration, because such an agreement cannot be said to fall under the ban of the rule against the impairment of a written contract by evidence of prior or contemporaneous agreements.

Appeal from Jackson Circuit Court.—*Hon. Joseph A. Guthrie,* Judge.

REVERSED AND REMANDED.

*J. G. Trimble* for appellant.

*J. H. Austin* and *Geo.W. Littick* for respondents.

JOHNSON, J.—This action is for the recovery of the value of two telescope bags and contents destroyed while in the possession of defendant, a common carrier, to which they had been delivered for transportation from Milan to Coffey, stations in this State on defendant's railroad. The cause alleged in the petition is based on a negligent breach of the common law duty of defendant safely to carry and deliver freight received for transportation. The answer is a general denial. Verdict and judgment were for plaintiffs in the sum of $1124 and the cause is here on the appeal of defendant.

Plaintiffs were partners engaged at Kansas City in the business of selling jewelry to country merchants. E. Russell, the senior member, to whom we shall refer as plaintiff, was the principal salesman of the firm and his practice was to travel over the country with a small stock of assorted jewelry from which he made sales and deliveries to retail dealers. While on a trip of that kind he went to defendant's station at Milan for the purpose of securing transportation for himself and his baggage to Coffey where he had an appointment with a customer. Defendant's agent sold him a

ticket and checked his two telescope bags as baggage. The bags contained a stock of assorted jewelry valued by plaintiff at $3000. As the train on which he took passage and which should have carried his baggage was leaving the station, plaintiff discovered that the baggage had not been put on and at his request the conductor stopped the train to allow him to return to the station, as it would be useless for him to go on without his merchandise. This was at midday and on returning to the station he found that the first train on which he could secure passage to Coffey was a freight train due to arrive after midnight. After a heated controversy the employee of defendant who had neglected to put the baggage on the train gave plaintiff four dollars in compensation for the damages he had sustained and the station agent made an exchange of tickets to enable him to become a passenger on the freight train and agreed to forward the telescope bags on that train. Plaintiff was informed that the rules of defendant forbade the transportation of baggage on freight trains and at the request of the agent he surrendered his checks and accepted, in lieu thereof, a bill of lading for the transportation of the property as freight. Witnesses for defendant speak of this bill of lading which was signed by both parties as a "receipt for baggage" and it appears that it was the custom of defendant to carry the baggage of freight train passengers on the same train without extra charge but receipted for and billed as freight.

The bill of lading in question was in the form of a regular shipping contract and by its terms provided for the transportation of the property as freight for hire, though no rate was stated. Among its stipulations was one printed on the back exempting defendant from liability "in any way for any documents, specie, or for any articles of extraordinary value not specifically rated in the published classification or tariffs unless a special agreement to do so and the

stipulated value of the articles are endorsed hereon.'' The bill of lading was in the form promulgated by the Board of Railway and Warehouse Commissioners of this State and the same as that approved by the Interstate Commerce Commission. The classifications adopted by both bodies provided that ''watches, jewelry, gold or silver coin, articles manufactured from precious metals, drafts, bank bills, notes, deeds or valuable papers'' should not be accepted by railroad companies either as baggage or freight and consequently, no rates for the carriage of such property had been fixed and published by defendant. But as indicated in the language of the stipulation we have quoted from the bill of lading, the classifications and rules authorized the carriage of such property as freight when arranged for by special agreement between the carrier and shipper.

Plaintiff testified he told the agent that the telescope bags contained a stock of jewelry of the value of $3000 and that at first the agent refused to allow them to be carried on the freight train but afterward consented and agreed to send them on that train as freight for the transportation of which a reasonable charge would be made. Further he states he suggested that the value of the property should be stated in the bill of lading but the agent told him that such recital was unnecessary.

This testimony is contradicted by the witnesses of defendant who say that no value of the property was stated by plaintiff and that he referred to the contents of the telescope bags as samples of notions. The bill of lading was issued in triplicate and after plaintiff had received his copy the employee at the station who attended to the billing took the original and wrote on its face (but not in the presence of or with the knowledge of plaintiff), the words ''free acct. bagg.,'' which meant that the property was to be carried free as baggage and on the waybill he put the initials ''D. H.''

(dead head) which had the same significance. Plaintiff and his property left Milan on the freight train but at an intermediate station a collision occurred which demolished the rear end of the train and resulted in the complete destruction of the bags and their contents.

Plaintiff testified: "I told him (the agent) I was selling jewelry and I was delivering the goods and I had to have the goods with me. Made it plain to him and when they was making the bill of lading out I says you had better put down the amount; I got between $2000 and $3000 worth of goods there, and he says it is not necessary to put the amount down. . . . Before they made the bill of lading out I was given to understand I was to pay freight on my shipment, that they would not take it as baggage, it had to be shipped as freight. I argued the question quite a while regarding that. I made the remark 'adding insult to injury, wanting to charge a man freight charges on his goods after he has got left and it was their fault.' "

Plaintiff states, in effect, that he did not know of any rules that would prevent the carriage of his property as freight. There are other facts in evidence but those stated will suffice for a proper understanding of the case. Defendant complains of the refusal of the court to admit in evidence the bill of lading on which the notation was made by defendant "free acct. bagg." At the time of the offer the triplicate copy of the contract retained by plaintiff, which did not contain such notation, was in evidence and the obvious purpose of the offer was to place before the jury as evidence, an attempted alteration of the contract made by defendant in the absence, and without the knowledge, of plaintiff, the other party. Counsel contend that this alteration on which he bases an argument in support of his position of the nonliability of defendant, being made before the transportation begun should be considered as being of the *res gestae.* We do not share

this view.    After the contract was signed and delivered, neither party had authority to change or vary it by insertions or interlineations in the copy retained by him.    This is an elemental rule of the law of contracts and the court did not err in refusing to allow defendant to gain an advantage from such *ex parte* and obviously self-serving insertion.

The next point is that oral testimony should have been received "to explain the character of the contract," i. e., to show that, in fact, it was intended as a receipt for baggage to be carried on a freight train and not a bill of lading or shipping contract for the transportation of freight.    The contract is in the standard form approved by the Board of Railway and Warehouse Commissioners, by the Interstate Commerce Commission, and in use by nearly every railroad in the United States.    It provides for the transportation of freight in plain and unambiguous terms and to permit either party to show that it was intended to provide for an entirely different service would be violative of the elemental rule forbidding the contradiction of written contracts by evidence of prior or contemporaneous oral agreements.

Whether treated as baggage or freight the stock of jewelry under the rules of defendant and of the public boards to which we have referred, as well as by the express provision we have quoted from the contract, could not be carried except under special agreement.    Section 3239, Revised Statutes 1909, provides that a common carrier shall not be liable for jewelry carried as baggage except by special contract between the carrier and shipper—a similar rule to that we have noted relating to the carriage of such valuables as freight.    Carriers are not prohibited from transporting jewelry, either as baggage or freight, but they incur no liability on account of such transportation unless the character of the property be disclosed before

the beginning of the transportation and a special contract or agreement be made therefor by the parties.

We do not regard with favor the position of plaintiff that he should not be held bound by the stipulations printed on the back of the bill of lading nor by the classifications and rules of the public boards and of defendant relating to the transportation of jewelry of which he argues he had no actual knowledge. The only reasonable conclusion that may be drawn from his own testimony is that he knew of the exceptional treatment the subject of the transportation of such property is given in the contracts and practices of common carriers. He was an experienced traveling salesman of jewelry and his statements to the agent show beyond question that he was well informed on the subject. He was careful to tell the agent that he carried a stock of jewelry, to state its value, and to ask that such value be noted in writing on the bill of lading. We hold as a matter of law that he had actual notice of the stipulation on the back of the bill of lading and is in no position to urge its exclusion from among the binding agreements of the transportation contract. We find here a proper case for the application of the general rule requiring that a bill of lading or receipt shall be taken as the sole evidence of the final agreement of the parties respecting the shipment. [O'Bryan v. Kinney, 74 Mo. 125; Railway Co. v. Cleary, 77 Mo. 634; Patterson v. Railway, 56 Mo. App. 657.]

The wording of the stipulation indicates that the general form, i. e., the standard form of bill of lading was intended to be used and in this instance was used for the transportation of freight of extraordinary value. It authorized the making of a supplemental special agreement to cover the exceptional features of such shipments and contains the provision that such special agreement, together with a stipulated value of the articles must be indorsed on the bill of lading.

There is no prohibition against, but authority for, a supplemental agreement and, therefore, evidence of such agreement cannot be said to fall under the ban of the rule against the impairment of a written contract by evidence of prior or contemporaneous oral agreements. It was competent for plaintiff to adduce evidence tending to prove that a special agreement was made for the transportation of jewelry as freight for a reasonable consideration.

We do not regard the omission of the agent to note the special agreement in writing on the bill of lading and his refusal to insert the value of the property as fatal to plaintiff's case. The provision requiring those things to be done clearly being for the benefit of the carrier could be waived by the carrier and we hold that the refusal of defendant to accede to the request of plaintiff for a compliance with that provision followed by the acceptance of the goods as an extraordinary shipment constituted a waiver of strict compliance. The demurrer to the evidence was properly overruled.

But the judgment must be reversed and the cause remanded for errors in the rulings on the instructions which ignored the binding force of the stipulation under consideration and submitted to the jury as material the question (about which we have shown there can be no material question) of whether or not plaintiff had knowledge of the rules of the Board of Railway and Warehouse Commissioners and of defendant relating to the transportation of jewelry.

Reversed and remanded. All concur.